## No. 21966.

B. B. Peterson, and Gene Peterson, d/b/a Peterson & Son of Hillrose, Colorado v. Colorado Potato Flake & Mfg. Co., a corporation.

(435 P.2d 237)

Decided December 11, 1967.

WELLS and SYNDAL, GEORGE M. REDDIN, for plaintiffs in error.

QUIGLEY, RHODES & WILDER, NORMAN R. HELWIG, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HODGES.

THE plaintiffs in error, B. B. Peterson and Gene Peterson, doing business as Peterson and Son, sought damages in an amount in excess of $38,000 for breach of contract against the defendant in error, Colorado Potato Flake and Mfg. Company, a corporation.

The amended complaint of the Petersons alleged an oral agreement whereby they agreed to sell to the defendant company their entire 1960 potato crop estimated to be 22,900 cwt. at $2.35 per cwt. for potatoes

removed from Peterson's premises during the month of November 1960, and $2.40 per cwt. for potatoes removed after December 1, 1960. Defendant company removed approximately 2,810 cwt. of potatoes under this agreement, for which it paid the Petersons $6,894; but, at the end of December 1960, the defendant company notified the Petersons it would not further honor the contract. Thereafter some of the potatoes were sold to third persons for $9,784. The balance of the potatoes could not be sold and were eventually thrown out.

The issues as framed by the pleadings were tried to the court which found in favor of the Petersons and assessed their damages at $8,011. Contending this award of damages is inadequate under the evidence, the Petersons have initiated this writ of error.

■■■ The defendant company alleges cross errors, stating the contract was divisible and separable, and therefore was not in its entirety breached; and secondly, the defendant company contends the contract was subject to the express condition that the potatoes be chippable and that the defendant company refused to take further delivery of the potatoes because they were not chippable. On these grounds the defendant company asks that the judgment be reversed.

These cross assignments of error are without merit. The court's findings are adverse to both of the defendant company's contentions, and the record amply supports the court's findings. As to the amount of damages awarded, the defendant company maintains that if it is liable, the damages as awarded were fair and reasonable under the evidence presented.

The sole issue therefore is whether, under the evidence, the $8,011 award of damages by the court is adequate. The trial court in its written findings acknowledges that the Petersons suffered damages in excess of the court's award, but added that there was no satisfactory evidence upon which the court could base another figure without resorting to speculation or ar-

bitrary determination. The Petersons, on the other hand, say that the court's findings and the evidence do indicate several methods of computation which the court could have utilized to ascertain damages which would have more fairly compensated the Petersons for their loss.

An examination of the court's findings pertinent to this issue is therefore essential. In substance the court found:

1. An oral contract between the Petersons and defendant company to purchase Petersons' 1960 potato crop consisting of 20,000 cwt.

2. An agreed price of $2.35 per cwt. for potatoes removed in November 1960; $2.40 per cwt. for potatoes removed in December 1960; and an additional 5 cents per cwt. per month thereafter.

3. That it was agreed the potatoes would be U.S. No. 2 Grade or better; that at a time prior to the first removal of the potatoes by the defendant company there was a sort out of approximately 5% to make U.S. No. 2 Grade or better.

4. That the defendant company did remove a portion of the potatoes for which it paid the Petersons $6,894 at the contract price.

5. That on December 30, 1960 the defendant company rejected the contract and declined to further fulfill its obligations under the contract, and that it thereby breached its contract with the Petersons.

6. That the Petersons made diligent efforts to sell the potatoes remaining after breach, and that some 7,224 cwt. were sold for $9,688 in cash or credit.

7. That the amount of damages awardable is $8,011, which amount is the difference between the actual sale price of the 7,224 cwt. sold by the Petersons after the breach, and the sum which the Petersons would have received if this 7,224 cwt. had been taken by the defendant company at the January 1961 contract price.

Finding No. 7 in particular reveals that no damages

were awarded for the loss caused by the non-sale of the balance of the potatoes which had to be thrown out after several months. This balance is readily computable from the court's findings as being slightly under one-half of the 20,000 cwt. originally available under the contract as found by the court. With regard to this the court found "that there is no evidence of the amount or percentage of sort-out at the time of the first sorting and grading following the termination of the contract from which this quantity might be determined."

This quantity of unsold potatoes which would meet U.S. No. 2 Grade or better could, in our view, after examining all the testimony, be reasonably estimated at a figure which at least would have given the Petersons a more realistic amount as their damages.

It appears from the findings of the court and the evidence that the initial sort-off on those potatoes first taken by the defendant company was 5%. As a starting point, then, this 5% could be applied against the 20,000 cwt. There is much testimony about the application of heat to the potatoes in December 1960 which was done after a discussion between the Petersons and the defendant company's agent. The court found that both of the Petersons and the defendant company knew the purpose of heating and the natural consequences thereof. In effect, the court found that the damages resulting therefrom were not attributable necessarily to the defendant company. The evidence reflects that normally potatoes in storage are kept at a temperature of around 40°. When the heat was applied, this temperature was raised to approximately 70°. This was done, according to the testimony, to condition the potatoes for use by the defendant company. It was also acknowledged that this would have the effect of increasing the percentage of sort-off and therefore by the end of December 1960 when the contract was rejected the sort-off percentage would have probably increased to some point over 5%

and would have thereafter progressed at a more rapid rate than if the heat had not been applied. As stated by the court, the evidence is uncertain as to the percentage of sort-off at the time of the rejecting of the contract by the defendant company or at any time thereafter. Nevertheless, a portion of the potatoes sold thereafter to third parties were sold as U.S. No. 2 Grade or better. It follows therefore that a portion of the potatoes which were unsold and eventually thrown out would have met the required grade on December 30, 1960.

██ In our view, there is not such a complete lack of evidence as to justify the trial court to refuse to award any damages whatsoever for this obvious loss suffered by the Petersons. We do agree, the evidence falls far short in presenting such facts as would formulate a positive and certain basis for calculating these damages, but the available evidence, such as it is, does have the sufficiency necessary to permit the trial court to reasonably estimate and approximate these damages for this loss.

██ The damages which were awarded are inadequate. The court, in effect, acknowledged this inadequacy in its findings. There is no doubt that the evidence reflects an uncertainty as to the additional amount of damages, but the fact remains that the evidence demonstrates more damages than actually awarded, and that these additional damages are attributable to and were suffered as a result of the defendant's breach of the contract. Confronted with this, the trier of the facts must make a determination thereof based upon the available evidence. The rule which precludes the recovery of uncertain and speculative damages applies only to situations where the fact of damages is uncertain, not where the amount is uncertain. In *Hyman and Co. v. Velsicol Corp.*, 123 Colo. 563, 233 P.2d 977, this court in discussing damages suffered by the plaintiff

expressed the rule which we believe applies to the instant case. This court stated:

"Under the evidence the master found, and the Trial Court adjudged, that Plaintiff had been damaged, although the exact extent thereof is not definite and certain. The rule is that damages based upon mere speculation and conjecture are not allowable; however, where it has been definitely established that damages are traceable to and the direct result of a wrong, the uncertainty as to the amount thereof is a question for determination by the trier of the facts. Any other rule would result in rewarding a wrongdoer."

Other Colorado cases have in like manner treated the subject of damages which are difficult or even impossible to determine with mathematical certainty. See *Riggs v. McMurtry*, 157 Colo. 33, 400 P.2d 916, *Donahue v. Pikes Peak Automobile Co.*, 150 Colo. 281, 372 P.2d 443, *Goldstein v. Rocky Mountain Envelope Co.*, 78 Colo. 341, 241 P. 1110, *Westesen v. Olathe State Bank*, 75 Colo. 340, 225 P. 837, *Denver v. Bowen*, 67 Colo. 315, 184 P. 357.

In *Brown v. Alkire*, 295 F.2d 411 (CCA 10th) the jury was the trier of the facts. However, the same rationale was applied by the court to the jury's assessment of damages. In affirming the amount of damages, the court stated:

"Damages need not be proved with such preciseness as to permit a Jury to reach a verdict with mathematical certainty. An approximation is sufficient if there is substantial evidence which, together with the reasonable inferences to be drawn therefrom, provides a reasonable basis of computation."

The trial court, being the trier of the facts, under the circumstances and evidence of this case, had the sole prerogative and responsibility of making a reasonable finding which would provide for a fair, equitable, and adequate award of damages. Even though it may be difficult or even impossible to ascertain such damages with mathematical certainty, the trier of the facts,

knowing that greater damages than awarded were suffered, must, by utilizing all the evidence and the reasonable inferences emanating therefrom, devise a fair method for assessing such damages. This was not done by the trial court.

In our view, the interests of all concerned, will be best served at this time by a reversal of the court's judgment, and the remanding of this case for a new trial on the sole issue of the damages suffered by the Petersons as a result of the defendant company's breach of the contract. The alternative would be to remand the case for a review of the evidence and a re-analysis thereof by the trial court for the purpose of additional findings and modification of judgment. Because of the lapse of time since the trial, we believe this would be an undue burden on the trial court, and would not accomplish fully the attainment of an award of adequate damages.

The judgment is reversed and this case is remanded for a new trial on damages only.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE PRINGLE concur.