Theodore R. POMERANZ; Pomeranz Investment Company: Marvin L. Stone and Gerald S. Gray, Trustees; Jack and Mildred Zerobnick; David Pollock; Stephen Gordon; Estate of Ruth Stone; Agnete Cohen; Helen B. Barron; Beatrice Pomeranz; Lisa E. Feld; Tony R. Pomeranz; Alan Z. Pomeranz, the Owners, d/b/a Mesa Denver Associates, Petitioners,

v.

**McDONALD'S CORPORATION, a Delaware corporation, Respondent.**

**No. 91SC478.**

Supreme Court of Colorado, En Banc.

Jan. 11, 1993.

---

**1380**

Law Offices of Roger L. Simon, Roger L. Simon, Denver, for petitioners.

Holland & Hart, John C. Tredennick, Jr., William E. Mooz, Jr., Denver, for respondent.

Justice ERICKSON delivered the Opinion of the Court.

The court of appeals in *Pomeranz v. McDonald's Corp.*, 821 P.2d 843 (Colo.App. 1991), reversed that part of the trial court's judgment awarding damages for future taxes and maintenance costs to a lessor for the breach of a commercial lease. The court of appeals found that the only evidence presented on the issue of future damages was speculative and based on hearsay. The court of appeals therefore concluded that the amount of future damages was not adequately proven. We granted certiorari and now affirm the judgment of the court of appeals as to future maintenance expenses, but reverse the judgment of the court of appeals as to future taxes. Accordingly, we return this case to the court of appeals with directions to remand to the trial court for a new trial on the amount of future taxes due the petitioners under the lease and for an award of nominal damages for breach of the maintenance provisions in the lease.

I

In 1963, the respondent, McDonald's Corporation, entered into a commercial lease agreement with Tellar Arms, Inc., the petitioners' predecessor-in-interest, for the lease of space in a shopping center in Grand Junction, Colorado.[1] In May 1974, the petitioners and McDonald's mutually agreed to amend the lease to require McDonald's to pay taxes and maintenance costs in addition to rent. McDonald's remained in possession of the premises until February 1986, when it moved to another location. McDonald's breached the lease agreement in September 1986, when it was unable to sublease the property and ceased making payments to the petitioners under the lease, although it paid the taxes and maintenance costs until that time. The amount paid by McDonald's for taxes and maintenance is not in evidence.

The petitioners brought suit against McDonald's alleging that McDonald's default on its obligation to pay rent constituted a breach of the lease agreement. The remedy sought by the petitioners was a judgment for "all rent and other charges accruing under the lease." In addition to future rent and insurance, the petitioners sought payment of future taxes and maintenance expenses as "other charges accruing under the lease."

At the trial before the court, the petitioners presented the testimony of Theodore Pomeranz, the managing co-owner of the shopping center, as the sole evidence that "other charges" had accrued and would continue to accrue through the end of the lease term. Pomeranz testified that, in his opinion, future taxes on the property would amount to $48,363 through the end of the lease term. He arrived at this figure by taking the amount of the 1987 tax bill and calculating an annual tax increase of five percent based on inflation.[2] Pomeranz also testified that, in his opinion, future maintenance expenses for the property would amount to $35,407, based on his estimate of

---

1. The petitioners are a group of individuals and estates doing business as Mesa Denver Associates, who purchased individual undivided interests in the property from Tellar Arms, Inc., and presently own the shopping center.

2. The amount of the 1987 tax bill was $6,563.31. The tax bill was admitted into evidence without objection. Additionally, the tax bill for the second half of 1986 was admitted into evidence without objection. However, Pomeranz's testimony on the amount of future taxes and the five

$4,800 per year and an annual increase of five percent for inflation.[3] Pomeranz provided no supporting information on how he arrived at the $4,800 amount.[4] Moreover, Pomeranz was not qualified as an expert in either the estimation of inflation rates, property taxes, or maintenance expenses.

At the conclusion of the trial, the trial court held that McDonald's had breached the lease and was liable to the petitioners for damages, including future rent, insurance, taxes, and maintenance expenses. The trial court based its award of damages for future taxes and maintenance expenses solely on Pomeranz's testimony.

The court of appeals affirmed the trial court's determination that McDonald's had breached the lease and owed the petitioners damages. However, the court of appeals reversed that portion of the judgment awarding future taxes and maintenance expenses, concluding "that Pomeranz's testimony, much of which constituted hearsay and speculation [was] insufficient to support an award of damages for future ... maintenance, and taxes." *Pomeranz*, 821 P.2d at 848.[5] We agree with the court of appeals that the petitioners failed to present legally sufficient evidence to support the trial court's award of damages for future maintenance expenses and affirm that judgment. However, we disagree with the determination of the court of appeals that the petitioners failed to present legally sufficient evidence to support an award of future taxes. Accordingly, we affirm in part, reverse in part, and remand this case with instructions.

## II

In a breach of contract action, a plaintiff may recover the amount of damages that are required to place him in the same position he would have occupied had the breach not occurred. *Schneiker v. Gordon*, 732 P.2d 603, 612 (Colo.1987); *Taylor v. Colorado State Bank of Denver*, 165 Colo. 576, 580, 440 P.2d 772, 774 (1968). However, damages are not recoverable for losses beyond an amount that a plaintiff can establish with *reasonable certainty* by a preponderance of evidence. *Riggs v. McMurtry*, 157 Colo. 33, 39, 400 P.2d 916, 919 (1965) (stating that the trier of fact may not base an award of damages on mere speculation, rather, the plaintiff must establish by a preponderance of the evidence that he has in fact suffered damage and that the evidence introduced provides a reasonable basis for a computation of damages); *see also Bunch v. Signal Oil & Gas Co.*, 505 P.2d 41, 43 (Colo.App.1972) (holding that there must be sufficient competent evidence from which the trier of fact could estimate the amount of damages with a reasonable degree of certainty); *Restatement (Second) of Contracts* § 352 (1981) (damages are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty).

The "rule of certainty" most often arises in breach of contract cases involving lost profits, but the rule also applies to other claims for future losses. *See* Charles T. McCormick, *Handbook on the Law of Damages* § 28 (1935) [hereinafter McCor-

percent inflation rate was admitted over McDonald's objection.

3. Pomeranz's testimony was admitted over McDonald's objection.

4. The record reflects that Pomeranz had no personal knowledge of the amounts paid as maintenance on the property because McDonald's had paid these amounts for the previous fifteen years pursuant to the lease agreement.

5. In addition to reversing that part of the judgment for future taxes and maintenance expenses, the court of appeals reversed a judgment

for future insurance costs. The court of appeals held that Pomeranz's testimony relating to the anticipated cost of insurance was inadmissible hearsay, based solely on a single unaccepted offer of insurance, and was entirely too speculative to establish with reasonable certainty the actual cost of insurance. *Pomeranz*, 821 P.2d at 848. The petitioners have not appealed this determination of the court of appeals and we do not address it. Nor have the petitioners or McDonald's appealed that part of the judgment for future rent that was affirmed by the court of appeals.

mick]. We have never addressed the rule of certainty in cases involving future taxes or future maintenance expenses.

██ McDonald's claims that this case is governed by our decisions in lost profit cases. McDonald's asserts that the petitioners failed to prove the amount of future damages with adequate certainty because the petitioners did not present expert testimony regarding mill levies or property valuations, or the best evidence of either past, present, or future maintenance costs. *See Tull v. Gundersons, Inc.*, 709 P.2d 940, 945 (Colo.1985) (stating that in proving the amount of damages for lost profits it is sufficient for a plaintiff to provide the best evidence obtainable under the circumstances). The petitioners, on the other hand, would interpret the rule of certainty as only requiring a plaintiff to prove the fact of future damages with certainty, which is undisputed in this case, and not also the amount of future damages.[6] *See Tull*, 709 P.2d at 943; *Peterson v. Colorado Potato Flake & Mfg. Co.*, 164 Colo. 304, 309, 435 P.2d 237, 239 (1967). In applying the rule of certainty to the facts of this case, we disagree with both McDonald's assertion that a plaintiff is always required to present the best evidence obtainable, and also with the petitioners' oversimplification of the rule of certainty.

### III

██ In a breach of contract action involving future damages, a plaintiff is required to prove both the fact of the injury and the amount of the loss. *See, e.g., Tull*, 709 P.2d at 943–45; *John v. United Advertising, Inc.*, 165 Colo. 193, 197, 439 P.2d 53, 55 (1968); *see also* McCormick, at § 26 ("[t]he certainty rule, in its most important aspect, is a standard requiring a reasonable degree of persuasiveness in the proof of

the fact and of the amount of the damage."). Because a plaintiff often faces tremendous practical difficulties in proving future damages, he should not be barred from recovery for failing to prove the amount of future damages simply because the amount of the loss cannot be determined with mathematical certainty. *Riggs*, 157 Colo. at 39, 400 P.2d at 919. In addressing the need for certainty and the practical difficulties of proving future losses with precision, we have struck a balance which allows a plaintiff a certain amount of leeway in proving the amount of the loss in situations where circumstances make proving the exact amount difficult or impossible. *See Peterson*, 164 Colo. at 310, 435 P.2d at 240.

██ In balancing the competing interests involved in a future damages case, we have adopted a rule requiring a plaintiff to provide the trier of fact with (1) proof of the fact that damages will accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss. *See id.* at 310, 435 P.2d at 239; *Tull*, 709 P.2d at 945. This compromise allows courts to avoid harsh applications of the rule of certainty, while at the same time holding a high standard of certainty as an ideal. *See* McCormick, § 27.

██ In *Tull*, we addressed a situation in which the plaintiff provided detailed estimations of lost profits by submitting itemized costs of completion and expected profits. In finding that the plaintiff had sustained his burden of proof on the issue of lost profits, we held that such testimony was the best evidence obtainable under the circumstances. *Tull*, 709 P.2d at 945. In so holding, we did not establish a requirement that plaintiffs must *always* submit the best obtainable evidence under the cir-

---

**6.** Following the 1974 amendment, McDonald's was obligated to pay, in addition to monthly rent, *property taxes and maintenance expenses.* It is undisputed that McDonald's would be re-

quired to make these expense payments had it not breached the lease agreement and that Mc-Donald's made these payments prior to its abandonment and breach of the lease.

cumstances.[7] Rather, in *Tull*, we sought to prevent the rule of certainty from barring an injured party from recovering damages in a situation in which the plaintiff had presented sufficient evidence so that the trier of facts could reasonably compute the amount of the lost profits although the amounts were not mathematically certain. Had we disallowed recovery in *Tull* for injuries that had been proven in fact, we would have rewarded the wrongdoer at the expense of the injured party. *See Peterson*, 164 Colo. at 310, 435 P.2d at 240; *see also* McCormick, § 27. The rule of certainty only requires that, together with the fact of damage, the plaintiff submit substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage. *Peterson*, 164 Colo. at 310, 435 P.2d at 240.

## IV

■ The petitioners contend that the rejection by the court of appeals of the evidence they presented usurped the trial court's discretion to act as fact-finder and determine the credibility, reliability, qualifications, and knowledge of witnesses. A reviewing court will not set aside factual findings of a trial court where the findings are supported by competent and adequate evidence appearing in the record. *Anderson v. Cold Spring Tungsten*, 170 Colo. 7, 13, 458 P.2d 756, 758 (1969). The question in this case is not whether the petitioners presented any evidence in support of their claim for future damages, but rather, whether the evidence they presented was legally sufficient to sustain their burden of proof on the issue of future damages. To sustain their burden, the petitioners were required to present sufficient evidence which would have provided the trial court with a reasonable basis for

the computation of the future taxes and future maintenance expenses. *Tull* 709 P.2d at 945; *Peterson*, 164 Colo. at 310, 435 P.2d at 240.

■ Under the Colorado Rules of Evidence, a witness may not testify unless evidence is introduced to support a finding that the witness has personal knowledge of the matter on which he testifies. C.R.E. 602. A witness who is not qualified as an expert may only testify as to an opinion where it is shown that the opinion is rationally based on the perception of the witness. C.R.E. 701. The petitioners did not qualify Pomeranz as an expert in determining mill levies, property assessments, inflation rates, or maintenance expenses. Pomeranz's sole qualification for testifying as to future taxes and maintenance expenses was that he was co-owner and manager of the property leased to McDonald's. The petitioners made no attempt to establish Pomeranz's basis of knowledge for testifying about the amount of future maintenance expenses, and no evidence was before the court on what the actual maintenance costs were.

### A

Despite McDonald's repeated objections, the petitioners laid no foundation for Pomeranz's opinion testimony that maintenance expenses amounted to $4,800 per year and would escalate at an inflationary rate of five percent. Pomeranz may have been qualified to testify about the cost of maintenance if it had been established that he possessed some personal knowledge of the maintenance costs, that maintenance costs were part of the business records relating to the property, or that his opinion was rationally based on his own perceptions as the managing co-owner of the property. *See* C.R.E. 602; C.R.E. 701. However,

---

7. Were such a requirement always necessary, courts would be required to draw arbitrary lines on what is the best evidence under the circumstances, or whether expert testimony is always necessary. Expert testimony is not always required to establish the amount of future damages. However, under the "best obtainable evidence rule" propounded by McDonald's, expert testimony would almost always be necessary because experts possess a level of knowledge not ordinarily held by owners of property and businesses.

there is no evidence in the record which establishes that Pomeranz ever paid a bill relating to the maintenance of the property or that he was personally responsible for any aspect of the maintenance because McDonald's had been responsible for the payments for the past fifteen years.[8]

Because no adequate evidentiary foundation was laid for Pomeranz's estimation of maintenance expenses on the property, it is impossible, absent pure speculation, to ascertain from the record how Pomeranz obtained the $4,800 estimation. The trial court's factual findings relating to future maintenance expenses are not sustained by either competent or adequate evidence and are therefore clearly erroneous. *See Anderson,* 170 Colo. at 13, 458 P.2d at 758 (holding that a reviewing court has the power to reject the findings and conclusions of the trial court where the findings are not supported by the evidence).

The evidence presented by the petitioners on the issue of future maintenance expenses was legally insufficient to provide a basis from which the trial court could arrive at a fair approximation of the amount of those expenses. However, on remand, the trial court may award nominal damages for future maintenance expenses. *See Doyle v. McBee,* 161 Colo. 130, 137, 420 P.2d 247, 250 (1966) (holding that in an action for breach of contract, only nominal damages can be recovered if there is no evidence produced from which the facts necessary to determine damages under the proper rule can be determined).

B

■ In attempting to prove the amount of future taxes, Pomeranz testified that as the managing co-owner of the property, he had personally paid the tax assessments as

they came due and then billed McDonald's for those amounts. It is undisputed that in the twenty four years the petitioners had owned the property, taxes had been assessed and paid every year. A reasonable inference from this fact is that taxes would continue to be assessed on the property in the future. Based on Pomeranz's testimony, the petitioners established the fact that they were damaged as to future taxes.

■ The petitioners were also required to submit sufficient evidence from which the trier of fact could reasonably determine the amount of future taxes. The record reflects that the petitioners established the most recent amounts of assessed taxes by properly admitting the tax bill for the second half of 1986 and the full amount of 1987. These tax bills showed that the amount of 1987 taxes was higher than the amount of 1986 taxes. McDonald's presented no rebuttal evidence that future taxes would be lower than the amount of 1987 taxes. A reasonable inference can be drawn from this evidence that future taxes on the property would at least equal the 1986 and 1987 tax amounts.

While the trial court erred in determining the amount of future taxes by accepting Pomeranz's five percent inflation factor, we can not say, based on the admissible evidence in this case, that an award of future taxes would be clearly erroneous. There is enough competent evidence in the record from which a trier of fact could compute McDonald's liability for future taxes with reasonable certainty. Therefore, as we said in *Peterson,*

[i]n our view, the interests of all concerned, will be best served at this time by a reversal of the [court of appeals] judgment, and the remanding of this case for a new trial on the sole issue of the [amount of future taxes owed to the peti-

---

8. In providing his estimate of future maintenance expenses, Pomeranz testified that the $4,800 included lot sweeping, lot striping, lot repairs, snow removal, structural repairs, painting, and roofing. However, Pomeranz did not testify how often each of these items would occur, what each would cost, or that he had ever

paid any amount for these items in the past. In fact, Pomeranz did not testify that he was basing his estimation of future expenses on past maintenance expenses, bids for future maintenance expenses, or costs incurred by similar properties.

tioners] as a result of [McDonald's] breach of the contract. The alternative would be to remand the case for review of the evidence and a reanalysis thereof by the trial court for the purpose of additional findings and modification of judgment. Because of the lapse of time since the trial, we believe this would be an undue burden on the trial court, and would not accomplish fully the attainment of an award of adequate damages.

*Peterson*, 164 Colo. at 311, 435 P.2d at 240. Similarly, a new trial should be held in this case on the issue of future taxes.

### V

Accordingly, we return this case to the court of appeals with directions to remand to the trial court for a new trial consistent with the views expressed in this opinion.