Ray W. KINCAID, Gladys L. Galloway, Massachusetts Company, Inc. (Edward S. Registrato, Local Trustee), Janet M. Fegley, Auburt S. Roberts, Marilyn M. Roberts, Edward F. Draugelis, Edward S. Registrato, Denise K. Registrato, Lynn R. Drayton, and Michael W. Tierney, Plaintiffs–Appellees and Cross–Appellants,

v.

WESTERN OPERATING COMPANY, a Colorado corporation, Defendant–Appellant and Cross–Appellee.

No. 93CA1326.

Colorado Court of Appeals, Div. II.

Dec. 29, 1994.

Rehearing Denied Jan. 19, 1995.

Hochstadt, Straw & Strauss, P.C., Richard S. Strauss, Denver, for plaintiffs-appellees and cross-appellants.

Reinhart, Boerner, Van Deuren, Norris & Rieselbach, P.C., Herbert A. Delap, R. Bruce Phillips, Denver, Robert E. Dippo, P.C., Robert E. Dippo, Boulder, for defendant-appellant and cross-appellee.

Opinion by Judge PLANK.

In this breach of contract action defendant, Western Operating Co., appeals the trial court's judgment in favor of plaintiffs, Ray W. Kincaid, Gladys L. Galloway, Massachusetts Company, Inc. (Edward S. Registrato, Local Trustee), Janet M. Fegley, Auburt S. Roberts, Marilyn M. Roberts, Edward F. Draugelis, Edward S. Registrato, Denise K. Registrato, Lynn R. Drayton, and Michael W. Tierney. We affirm. A notice of cross-appeal was filed by plaintiffs which was not pursued. Therefore, we deem it to have been abandoned.

This appeal involves the interpretation of a provision in a Standard Operating Agreement for oil and gas operations in the "Propst Prospect," two tracts of land referred to here as §§ 26 and 27. The "Propst Prospect" was one of four which defendant and plaintiffs agreed to develop pursuant to a Letter Agreement executed in June 1988. Under the Letter Agreement, defendant would act as the operator of any well drilled on the prospect, and plaintiffs would jointly have the right to become a 50% working interest holder (paying their share of the costs and receiving an equal share of production revenues) in any well on the prospect which had at least 80% of its net revenues available after overrides (all non-cost paying interests) were taken into account.

The parties acquired a 100% leasehold interest in the minerals in § 26, but were able to acquire only a 50% leasehold interest in those in § 27. The remaining 50% interest in the § 27 minerals was held by "Smith, et al." (Smith Interests).

Once they had acquired the leasehold interests, the parties entered into the Standard Operating Agreement (Agreement) at issue in this case in September 1989. They drilled the Propst A–1 well, in § 26, which became a moderately good producer. Because this well became productive, the parties earned the right, under their Agreement, to drill another well, also in § 26, just north of the Propst A–1 well, the Segelke A–1, which also became a moderately good producer. They then agreed to drill the Propst B2 well, located in § 27, where they had only a 50% leasehold interest. This well was only a marginal producer.

In November 1990, unbeknownst to plaintiffs, defendant acquired the remaining 50% interest in § 27 from the Smith Interests. Plaintiffs discovered this inadvertently in August 1991, when defendant proposed that the parties agree to re-enter an old well, the Propst B–3X well, located in § 27. When they discovered that defendant had acquired the Smith Interests in § 27, plaintiffs notified defendant that those interests were subject to the Agreement and, therefore, that plaintiffs had a right to participate in the net profits from 100% of the proposed Propst B–3X well, rather than just the 50% the parties had acquired at the time the Agreement was executed.

Defendant denied that the Smith Interests were subject to the Agreement because the parties had not yet acquired those interests when it was executed.

The dispute resulted in this action, and after trial, the trial court found that: 1) the newly acquired Smith Interests were subject to the Agreement; 2) plaintiffs were entitled to damages in the form of lost revenues from the Smith Interests; and 3) defendants were not entitled to any off-set of damages by the amount they invested to acquire the Smith Interests because they failed to carry their burden of proving what those interests had cost.

## I.

Defendant argues that the trial court erred in holding that the Agreement unambiguous-

ly included the Smith Interests and, in the alternative, that if the Agreement were ambiguous, extrinsic evidence demonstrated the parties' intent that later acquired interests be included. We agree with the defendant that the Agreement is ambiguous. However, we are bound by the trial court's findings concerning the parties' intent.

### A.

■ Whether a written contract is ambiguous is a question of law, and the trial court's conclusion here that the Agreement is not ambiguous is not binding on this court. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978); *Colorado Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786 (Colo.App.1991), *aff'd*, 854 P.2d 1232 (Colo.1993). We conclude that the Agreement is ambiguous with respect to the oil and gas leases and interests which are subject to it.

The Agreement provides that the following information *shall* be included in Exhibit A to the Agreement and incorporated as part of the Agreement:

1) identification of lands subject to this agreement,

2) restrictions, if any, as to depths, formations, or substances,

3) percentages or fractional interests of parties to this agreement,

4) *oil and gas leases and/or oil and gas interests subject to this agreement,* and

5) addresses of parties for notice purposes. (emphasis added)

Exhibit A to the Agreement is deficient, however, as it provides only the information asked for in subsections 1, 2, and 5. As a result, it is impossible to determine, from the Agreement itself, what the oil and gas leases and interests subject to the Agreement are. Consequently, we conclude that the Agreement is ambiguous in this respect.

### B.

■ If there is an ambiguity as to the terms of a contract, extrinsic evidence is admissible to prove the intent of the parties to that contract. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, supra.*

■ Because the trial court determined, in the alternative, that the contract was ambiguous, it examined extrinsic evidence of the parties' intent and concluded that the parties intended the Agreement to include all interests acquired within a specific geographic area, including those interests acquired after the Agreement was executed, such as the Smith Interests. This finding is binding on this court as it is supported by competent evidence in the record. *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378 (Colo.1993).

### 1.

Defendant contends that the trial court improperly altered the Agreement to include an "area of mutual interest" with the effect that any leases in the geographically designated area which were acquired by any party after the Agreement was executed would become part of the Contract Area covered by the Agreement. We disagree.

Citing two law review articles, neither of which was cited to the trial court, defendant argues that in the oil and gas industry, a standard form operating agreement like the one at issue here does not create an area of mutual interest unless the parties expressly state their intention to create one. We are not persuaded.

■ Although, in construing a contract, the trial court may consider extrinsic evidence, such as evidence of industry standard or custom, "the existence of an industry custom is a question of fact." *Pittman v. Larson Distributing Co.*, 724 P.2d 1379, 1384 (Colo.App.1986).

■ Here, while the articles cited by defendant may indeed represent the industry custom, because they were not cited to the trial court, defendant cannot now assert that they definitively identify the custom of the oil and gas industry. It is improper for us to consider the articles on appeal, as we are without authority to make factual findings. *Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979).

One defense witness did testify that, in the oil and gas industry standard operating agreement, an area of mutual interest is

created only by express language in the contract. However, this testimony was contradicted by a witness for plaintiffs. Apparently, the trial court found the testimony of plaintiffs' witness to be more compelling, and we cannot disturb that finding here.

### 2.

Defendant further argues that no reasonable trier of fact could have found that the parties intended the Agreement to include the Smith Interests and that the trial court misconstrued the evidence in making this finding. Again, we are unpersuaded.

▬▬ Credibility of witnesses, sufficiency, probative effect, and weight of the evidence, and inferences and conclusions to be drawn from the evidence are all within the province of the trial court as trier of fact. *Deas v. Cronin*, 190 Colo. 177, 544 P.2d 991 (1976). Therefore, the trial court's factual findings will not be set aside on appeal if they are supported by competent evidence in the record. *Pomeranz v. McDonald's Corp., supra*. Furthermore, all ambiguities in the Agreement must be construed against the drafter, here defendant. *Colorado Interstate Gas Co. v. Chemco, Inc., supra.*

In its findings of fact and conclusions of law, the trial court explicitly identified the evidence that it found compelling and on which it relied in making its factual findings.

First, it was unrebutted that after the Agreement had been executed, plaintiffs presented a draft "Area of Mutual Interest Agreement" to defendant. At that time, defendant indicated that such an agreement was unnecessary because the Agreement already provided for an area of mutual interest.

Second, the court was persuaded by the testimony of a witness who was not a party to this lawsuit but who was also involved in the Propst Prospect. He testified that, under the written agreement he had with the parties, he assumed that he would receive his portion of the proceeds from *any* wells drilled in the geographic area described in the Agreement. It was undisputed that the Smith Interests were within that geographic area.

Third, there was no industry practice against an operating agreement applying to oil and gas interests and leases not acquired at the time the agreement is executed: It was uncontroverted at trial that it was a standard industry practice to reach agreements regarding leases that have yet to be acquired. Therefore, there was no strong policy reason not to construe the contract as including later acquired oil and gas interests and leases such as the Smith Interests.

Finally, it was significant to the trial court that, in other operating agreements to which defendant was a party, when the leaseholds involved were less than 100% leasehold interests, that fact was specifically noted in the agreement. Consequently, the fact that no such limitation was mentioned led the trial court to conclude that no limitation was intended other than the geographic one.

Consequently, the trial court's findings of fact and the inferences it drew from those facts are amply supported by evidence in the record. Therefore, its finding that the parties intended the Agreement to include any later acquired interests in the geographic area that was subject to the Agreement may not be overturned on appeal.

### II.

We are also unpersuaded by defendant's assertion that the trial court improperly relied on the real property concept of "after-acquired property" in construing the contract. The trial court's findings of fact and conclusions of law reveal that the court relied on contract principles only, and used the phrase "after-acquired" as descriptive of those interests that were acquired after the Agreement was executed.

### III.

Finally, defendant argues that the trial court's determination of damages was incorrect. We disagree.

▬▬ The trial court, as fact finder, has the sole prerogative for fixing the amount of damages. *Peterson v. Colorado Potato Flake & Manufacturing Co.*, 164 Colo. 304, 435 P.2d 237 (1967). Its award will not be set

aside unless it is manifestly and clearly erroneous. *Allison v. Smith,* 695 P.2d 791 (Colo. App.1984).

Defendant first asserts that the trial court's determination of damages is flawed because the figure it used to calculate damages was incorrect. This assertion, however, is without support in the record, and, in fact, the trial court concluded that defendant had not contested the amount it was awarding plaintiffs for their share of the profits attributable to the Smith Interests. Because there is evidence in the record to support the trial court's findings as to damages, we find that such are not manifestly and clearly erroneous.

■ Defendant further argues that the trial court erred in not off-setting plaintiffs' damages by their share of the acquisition costs of the Smith Interests. We disagree.

■ At trial, plaintiffs conceded that their 68.75% share of the acquisition costs should have been deducted from their damages. However, the burden was on defendant to prove what those acquisition costs were. *General Insurance Co. v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo.1982) ("If damages are established, then it is a defendant's burden to produce evidence on which any reduction of damages is to be predicated."). The trial court determined that defendant had failed to meet this burden, and this conclusion is supported by the evidence.

A defense witness testified, at trial and in his deposition, both that he did not know how much had been paid for the Smith Interests and that they had been acquired for $50,000, $53,000, or $40,000. Because of these inconsistencies, the trial court was not impressed with the witness' credibility regarding the acquisition cost. In fact, the testimony left the court "adrift in speculation about what [was an] easily demonstrable fact." As a result, the trial court held that defendant had failed to prove any off-set for the purchase price of the Smith Interests.

■ Defendant argues that an affidavit it filed with its motion for post-trial relief establishes that the Smith Interests were acquired for $44,525, and that based on the affidavit, the trial court should have granted its motion and made new findings as to damages. We disagree with defendant's interpretation of C.R.C.P. 59(f), and affirm the trial court's denial of the motion.

Defendant argues that although C.R.C.P. 59(d) sets out six specific grounds for when the trial court can grant a new trial, these grounds do not apply to C.R.C.P. 59(f) because under that section, the court need not order a new trial in order to hear additional evidence.

C.R.C.P. 59(f) provides:

On motion for post-trial relief in an action tried without a jury, the court may, *if a ground exists,* open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct entry of a new judgment. (emphasis added).

Defendant urges upon us an interpretation of C.R.C.P. 59(f) that would permit the trial court to continue to hear new evidence indefinitely after trial. However, C.R.C.P. 59(f), by its language, incorporates the six specific grounds upon which post-trial relief may be granted, which are found in C.R.C.P. 59(d).

Here, the trial court properly denied defendant's motion for post-trial relief. Contrary to defendant's position, the trial court was precluded from hearing additional evidence not presented at trial because none of the six enumerated grounds existed, as is required even when the trial is to the court.

Accordingly, the judgment of the trial court is affirmed.

HUME and ROY, JJ., concur.