SONOCO PRODUCTS COMPANY,
Plaintiff–Appellee,

v.

James R. JOHNSON, Jr., and
The Newark Group, Inc.,
Defendants–Appellants.

No. 00CA0886.

Colorado Court of Appeals,
Div. III.

April 12, 2001.

Perkins Coie, LLP, B. Lawrence Theis, Bobbee J. Musgrave, Steven J. Perfrement, Denver, CO, for Plaintiff–Appellee.

Wheeler Trigg & Kennedy, P.C., Hugh Q. Gottschalk, Carolyn J. Fairless, Denver, CO, for Defendant–Appellant James R. Johnson, Jr.

Holland & Hart LLP, Scott S. Barker, Marcy G. Glenn, Stephen G. Masciocchi, C. William Groscup, Denver, CO; Bartlit Beck Herman Palenchar & Scott, Joseph C. Smith, Jr., Alison G. Wheeler, Jennifer E. Heisinger, Denver, CO, for Defendant–Appellant The Newark Group, Inc.

Opinion by Judge NEY.

Defendants, James R. Johnson, Jr., and The Newark Group, Inc., appeal the trial court's judgment awarding damages in favor of plaintiff, Sonoco Products Company, on a misappropriation of trade secrets claim. We affirm.

Sonoco and Newark are direct competitors in the industry of manufacturing paper spiral tubes and cores, which are essentially paper tubes used for carrying other products such as paper towels, tape, newsprint, etc. Johnson had worked for Sonoco for thirty years when, in 1997, he resigned and began working for Newark. Sonoco subsequently sued defendants, contending that they misappropriated trade secrets and other confidential or proprietary information related to the manufacture of paper spiral tubes and cores.

After a bench trial, the court found that Johnson misappropriated numerous items from Sonoco as he was leaving its employ, such as manufacturing technology and parts, floppy disks, manuals, a videotape of the manufacturing process, customer lists, and pricing information. The court also found that Newark used or gained knowledge of much of the misappropriated information and actively encouraged its use.

Accordingly, the trial court ruled in favor of Sonoco, and against both defendants, on its misappropriation of trade secrets and civil conspiracy claims. It also ruled in favor of Sonoco on its breach of contact and breach of confidential and fiduciary relationship claims against Johnson, and on its aiding and abetting breach of confidential and fiduciary relationship claim against Newark.

The court awarded Sonoco $4,653,822 in actual damages against both defendants jointly and severally, and $22,165.50 in separate damages against Johnson. Additionally, it awarded punitive damages of $2,300,000 jointly and severally against both defendants. The court also awarded prejudgment interest, attorney fees, and costs.

On appeal, defendants do not challenge the trial court's rulings on liability, but instead only challenge the amount of damages awarded.

## I.

Defendants first contend that the trial court erred in awarding compensatory damages to plaintiff because a portion of the award lacked evidentiary support. However, because there was sufficient evidence in the record to support the court's actual damage award of $4.6 million, we disagree.

At trial, plaintiff presented an expert who testified to the "cost of capital" damages, or, in other words, the amount it would have cost Newark to finance the development of the misappropriated information. The expert testified that Newark saved between $19,759,135 and $25,150,257 in cost of capital by obtaining plaintiff's trade secrets via Johnson.

In closing arguments, plaintiff's counsel argued that its actual damages were in the $19 to $25 million range, as testified to by the expert. However, plaintiff's counsel alternatively suggested that if the court awarded

plaintiff permanent injunctive relief against defendants, then the actual damages totaled $4,653,822, which represented the damages incurred for the misappropriation of trade secrets that were either used by or disclosed to Newark. This figure consisted of: research and development costs and "costs of capital," as testified to by the expert, for several categories of misappropriated field improvements; nominal damages for misappropriated technology that did not have corresponding research and development costs; and royalty damages for plaintiff's lost business.

The court subsequently awarded permanent injunctive relief pursuant to § 7–74–103, C.R.S.2000. With regard to actual damages, the court found that the expert's calculation of between $19 and $25 million was at least arguably broad in scope and somewhat speculative. As such, the court found that the more conservative figure of $4,653,822, as proposed by plaintiff in closing arguments, was a reasonable damage estimate "consistent with the Court's notion of compensation based in large measure on plaintiff's effort and expense over time as opposed to Newark's less expensive method of acquisition."

The court agreed with the "theory and essential substance of the damage calculation submitted by plaintiff in closing argument and the figures contained in the evidence upon which it was based." However, it reiterated that the $4.6 million figure was consistent with its sense of equitable damages and was appropriate "based on any of the alternative damages theories before it," despite the fact that the figure was far more conservative than the estimate made by plaintiff's expert.

The Colorado Uniform Trade Secrets Act permits a plaintiff to recover for both compensatory damages and the defendant's profits from the misappropriation. Section 7–74–104(1), C.R.S.2000; *Mineral Deposits, Ltd. v. Zigan,* 773 P.2d 606 (Colo.App.1988). Alternatively, a plaintiff may recover reasonable royalty damages. Section 7–74–104(1).

■ Compensatory damages may be measured by several different methods: an agreed value; plaintiff's lost sales or profits; or research and development damages. *See*

Johnson, *Assessing Damages for Misappropriation of Trade Secrets,* 27 Colo.Law. 71 (August 1998). *See also Telex Corp. v. International Business Machines Corp.,* 510 F.2d 894 (10th Cir.1975).

■ The factfinder has the sole prerogative to assess the amount of damages, and its award will not be set aside unless it is manifestly and clearly erroneous. *Kincaid v. Western Operating Co.,* 890 P.2d 249 (Colo. App.1994). Under the circumstances of each case, the trial court has the responsibility to make a reasonable finding that would provide for a fair, equitable, and adequate award of damages. *Peterson v. Colorado Potato Flake & Manufacturing Co.,* 164 Colo. 304, 435 P.2d 237 (1967). Damages in trade secret appropriation cases are often difficult to ascertain with certainty. *See Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

■ However, damages based on mere speculation and conjecture are not allowed. Accordingly, if there is no competent evidence to support a damage award, it is clearly erroneous. *See Western Cities Broadcasting, Inc. v. Schueller,* 849 P.2d 44 (Colo.1993) (reversing damage award for the tortious taking of property because the valuation lacked an evidentiary basis); *Concord Realty Co. v. Continental Funding Corp.,* 776 P.2d 1114 (Colo.1989) (same).

■ Damages are not recoverable for losses beyond an amount that a plaintiff can establish with reasonable certainty by a preponderance of evidence. Thus, the plaintiff must submit "substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage." *Pomeranz v. McDonald's Corp.,* 843 P.2d 1378 (Colo. 1993).

■ However, if it is "difficult or even impossible to ascertain such damages with mathematical certainty, the trier of the facts, knowing that greater damages than awarded were suffered, must, by utilizing all the evidence and the reasonable inferences emanating therefrom, devise a fair method for assessing such damages." *Peterson v.*

*Colorado Potato Flake & Manufacturing Co., supra,* 164 Colo. at 310–11, 435 P.2d at 240. Once the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery. *Western Cities Broadcasting, Inc. v. Schueller, supra.*

Here, plaintiff's expert testified that the actual damages, in the form of cost of capital based on research and development costs, were in the $19 to $25 million range. Thus, there was sufficient evidence in the record to support the court's actual damage award of $4.6 million dollars.

### II.

Defendants also contend that the court erred in awarding damages to plaintiff for technologies Newark never implemented or used. Relying on *University Computing Co. v. Lykes–Youngstown Corp.,* 504 F.2d 518 (5th Cir.1974), defendants argue that an assessment of actual damages, based on a research and development costs theory, can only be based on the use of the misappropriated trade secrets. Because a portion of the actual damages was for items not used or implemented by them, defendants contend that the corresponding portion of the actual damages award was erroneous. We disagree.

There is no requirement in Colorado's Uniform Trade Secrets Act that there be actual use or commercial implementation of the misappropriated trade secret for damages to accrue. Misappropriation consists only of the improper disclosure or acquisition of the trade secret. Sections 7–74–102(2)(a), 7–74–102(2)(b), C.R.S.2000. Additionally, reasonable royalty damages are allowed for "a misappropriator's disclosure *or* use of a trade secret." Section 7–74–104 (emphasis added).

Defendants assert that, because the court permanently enjoined Newark from using those items in the future, the damages attributed to the unused knowledge resulted in duplicative recovery. Defendants rely on *DSC Communications Corp. v. Next Level Communications,* 107 F.3d 322 (5th Cir. 1997), which ruled that it is impermissible

double recovery for a court to award damages for future use and, at the same time, issue a permanent injunction barring such use. *See also Winston Research Corp. v. Minnesota Mining & Manufacturing Co.,* 350 F.2d 134 (9th Cir.1965).

However, the record here does not indicate that the compensatory damages awarded were for future damages. Rather, the court found that the $4.6 million damage award was appropriate, under any theory advanced by plaintiff, based on the development costs of the information misappropriated by defendants. The record does not indicate that the $4.6 million damage award was based on future gains realized by Newark related to the misappropriated information.

Furthermore, the injunction does not protect plaintiff from damages by disclosure of its trade secrets by former Newark employees who learned of the trade secrets while working at Newark.

Thus, we are not persuaded by defendants' contention that the compensatory damages awarded for the unused items and the permanent future injunction result in an improper award of double damages. *See Ovation Plumbing, Inc. v. Furton,* —— P.3d ——, 2001 WL 360867 (Colo.App. No. 00CA1001, April 12, 2001) (the Uniform Trade Secrets Act authorizes an award of both damages and injunctive relief).

### III.

Finally, defendants argue that the punitive damages should be reduced to the extent this court reduces the compensatory damages award. Because we have not reduced the compensatory damages awarded, we decline to consider that argument.

Judgment affirmed.

MARQUEZ and NIETO, JJ., concur.