**Kerry Elizabeth MAHAN, M.D.,
Plaintiff–Appellee,**

v.

**CAPITOL HILL INTERNAL MEDICINE
P.C., Defendant–Appellant.**

No. 05CA0512.

Colorado Court of Appeals,
Div. VI.

Dec. 14, 2006.

Gersh & Helfrich, LLP, Miles M. Gersh, James S. Helfrich, Jordan D. Factor, Denver, Colorado, for Plaintiff–Appellee.

Donald Chad Goldy, Littleton, Colorado, for Plaintiff–Appellee (On the Briefs).

Rothgerber Johnson & Lyons LLP, Gregory B. Kanan, Craig R. Welling, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge J. JONES.

Defendant, Capitol Hill Internal Medicine, P.C. (Capitol Hill), appeals a jury award of damages in the amount of $166,000 in favor of plaintiff, Kerry Elizabeth Mahan, M.D. (Dr. Mahan), on her breach of contract claim. Capitol Hill also appeals the trial court's denial of its request for attorney fees as the prevailing party on Dr. Mahan's claim under the Colorado Wage Act. We affirm.

## I. Background

On March 7, 1996, Capitol Hill and Dr. Mahan entered into a written "Agreement for Services" (Agreement), pursuant to which Dr. Mahan agreed "to practice medicine on behalf of Capitol Hill." With respect to Dr. Mahan's compensation, the Agreement provided in pertinent part:

3. *Compensation/Benefits.* Mahan shall be compensated as follows:

(a) Mahan shall be entitled to all of the cash collections which she generates during the time of this Agreement, less those expenses set forth in paragraph 3(b) below. "Cash Collections" are defined as all those monies paid to and received by the Capitol Hill for professional services rendered by Mahan....

Paragraph 3(b) provided for the deduction of certain expenses from the "Cash Collections," including one-quarter of the "Medical Practice Overhead" of Capitol Hill, which was defined to include, among other items, rent and accounting and billing expenses.

Under the Agreement, Capitol Hill was responsible for all billing and collections. In the spring of 1997, billing problems arose,

and all the Capitol Hill doctors lost income as a result. As relevant here, Capitol Hill's employee responsible for billing did not send bills to Dr. Mahan's patients or those patients' insurance carriers. In July 1997, Capitol Hill fired this employee, and retained Physician Management Information Systems (PMIS) to handle the billing going forward and to attempt to resolve the past billing problems. Capitol Hill found stacks of Dr. Mahan's unbilled invoices hidden under a potted plant in the fired employee's work space. PMIS determined that $84,000 in charges for Dr. Mahan's services were uncollectable because the charges had not been timely billed to the appropriate insurance companies.

By its terms, the Agreement expired after one year. However, the parties continued their relationship under the same terms set forth in the Agreement until September 1, 1997. At that time, because of the billing problems created by Capitol Hill, Dr. Mahan obtained her own management and billing services, although Capitol Hill considered that to be a violation of the Agreement. On or about October 31, 1997, Dr. Mahan left Capitol Hill.

As relevant here, Dr. Mahan filed suit against Capitol Hill and two of Capitol Hill's officers and directors (who were also doctors practicing medicine with Capitol Hill), asserting claims for breach of contract; violation of the Colorado Wage Act, former §§ 8–4–101, et seq., Colo. Sess. Laws 1960, ch. 52, § 80–25–1 at 152; breach of fiduciary duty; wrongful discharge; conversion; and fraud. The essence of Dr. Mahan's claims was that Capitol Hill had failed to pay her for patient charges which Capitol Hill should have collected, and that Capitol Hill had charged her for expenses that it was not entitled to charge her under the Agreement.

The case was tried to a jury. Dr. Mahan's expert witness, an accountant, testified that Dr. Mahan's damages were approximately $250,000. Of that amount, approximately $150,000 represented uncollected accounts receivable. In addition to the $84,000 in accounts receivable that had been written off by Capitol Hill as uncollectable, Capitol Hill had not collected additional outstanding accounts receivable. The expert's damages calculation also included approximately $50,000 in accounts receivable that had been collected by Capitol Hill but never paid to Dr. Mahan, and almost $50,000 in overcharges to Dr. Mahan for expenses such as employer's payroll taxes, malpractice insurance, cleaning fees, rent, and overhead. Of the latter amount, $24,000 was attributable to overcharges for rent.

The trial court directed a verdict for the individual defendants on all Dr. Mahan's claims, and for Capitol Hill on all claims except those for breach of contract and violation of the Wage Act, which the trial court allowed to go to the jury.

The jury found that Capitol Hill had breached the Agreement, and awarded Dr. Mahan $166,000 in damages. However, it also determined that Dr. Mahan was not an employee of Capitol Hill, and therefore found in Capitol Hill's favor on the Wage Act claim. The trial court subsequently denied Capitol Hill's motion for attorney fees under the Wage Act.

## II. Discussion

### A. Counsel's Alleged Misconduct

Capitol Hill contends that it is entitled to a new trial on Dr. Mahan's breach of contract claim because (1) Dr. Mahan's counsel repeatedly violated the trial court's order excluding evidence of damages arising from so-called capitated insurance contracts, and (2) Dr. Mahan's counsel made a personal plea during closing argument. We disagree.

Attorney misconduct may constitute grounds for a new trial. *Park Stations, Inc. v. Hamilton*, 38 Colo.App. 216, 218, 554 P.2d 311, 313 (1976). The decision whether to grant a new trial because of alleged attorney misconduct rests within the broad discretion of the trial court, and an appellate court will not disturb the trial court's ruling granting or denying a new trial absent an abuse of discretion. *Blecker v. Kofoed*, 714 P.2d 909, 912 (Colo.1986); *Ortivez v. Davis*, 902 P.2d 905, 908 (Colo.App.1995); *Park Stations, supra*, 38 Colo.App. at 218, 554 P.2d at 313.

Before trial, Capitol Hill filed a motion in limine to exclude evidence of damages pertaining to managed care insurance contracts, also known as "capitated" insurance contracts, on the ground Dr. Mahan had not timely disclosed her expert witness's opinion as to such damages. The trial court granted that motion on the first day of trial.

Capitol Hill asserts that Dr. Mahan's counsel and expert witness on damages repeatedly referred to capitated insurance contract damages during the trial, forcing its counsel to "make objections throughout the course of the trial," and that this led to jury confusion as to what damages it could award. We are not persuaded.

■ Despite Capitol Hill's claim that its counsel was forced to make "51 evidentiary objections" during the expert witness's testimony and a "total of 100 evidentiary objections" during the trial, the record shows that Capitol Hill's counsel made only three objections pertaining to the expert's testimony on capitated insurance contracts, all of which the trial court sustained. To remedy any potential prejudice, the trial court instructed the jury not to consider the testimony given by the expert in response to the last of the three questions to which Capitol Hill's counsel had objected. The trial court also ordered Dr. Mahan's counsel to ask only leading questions when questioning the expert witness about the exhibit which included capitated insurance contract damages so as to prevent the expert from providing answers including references to such damages. In light of these corrective measures, we cannot conclude that the trial court abused its discretion in refusing to order a new trial due to the references to capitated insurance contracts. *See Ortivez, supra,* 902 P.2d at 908 (the court may properly deny a request for a new trial if it sustains objections to an allegedly prejudicial line of questioning).

■ We are likewise unpersuaded that the trial court erred by denying Capitol Hill's motion for a new trial based on a statement by Dr. Mahan's counsel during closing argument, "I don't remember when I have had a client in more than 30 years of practicing law that I believe in more than Dr. Mahan." Capitol Hill's counsel did not object to this

statement at trial. Therefore, the objection was waived, and the trial court's denial of the motion for a new trial based on the statement of counsel was not error. *See Salazar v. American Sterilizer Co.,* 5 P.3d 357, 368 (Colo.App.2000).

### B. Sufficiency of the Evidence of the Amount of Damages

Capitol Hill argues that it is entitled to a new trial on damages because the jury could not have awarded $166,000 based on the evidence admitted at trial. Initially, Capitol Hill contends that because the Agreement provided that Dr. Mahan would be compensated based on "cash collections" minus expenses, accounts receivables that were not actually collected are not recoverable as damages. Capitol Hill also contends that there was "double counting" of approximately $13,000 in actual collections in Dr. Mahan's damages expert's analysis, and that the claimed damages for excess rent charges are unsupported by the evidence. We perceive no reversible error.

■ The amount of damages to which an injured party is entitled is a matter within the sole province of the jury. Thus, the amount of damages awarded by a jury may not be disturbed on appeal unless it is completely without support in the record. *Miller v. Rowtech, LLC,* 3 P.3d 492, 495 (Colo.App. 2000).

■ A plaintiff may only recover damages in an amount that can be established with reasonable certainty by a preponderance of the evidence. Therefore, a plaintiff "must submit 'substantial evidence, which together with reasonable inferences to be drawn therefrom, provides a reasonable basis for computation of the damages.' " *Sonoco Products Co. v. Johnson,* 23 P.3d 1287, 1289 (Colo.App.2001) (quoting in part *Pomeranz v. McDonald's Corp.,* 843 P.2d 1378, 1383 (Colo. 1993)). Once the fact of damage has been established with the requisite degree of certainty, uncertainty as to the amount of damages will not bar recovery. *Sonoco Products Co., supra,* 23 P.3d at 1290.

In arguing that accounts receivables could not be considered by the jury, Capitol Hills essentially denies responsibility to Dr. Mahan for any monies that were not collected through its billing services, regardless of why they were not collected.

■■■■ Capitol Hill's argument misconstrues its obligations under the Agreement. Under Colorado law, every contract contains an implied duty of good faith and fair dealing. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.1995); *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1362 (Colo.App.1994); *see also* Restatement (Second) of Contracts § 205 (1981). "The good faith performance doctrine attaches to contracts 'to effectuate the intentions of the parties or to honor their reasonable expectations.' " *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo.2006) (quoting in part *Amoco Oil Co., supra*, 908 P.2d at 498). It may be relied upon "when the manner of performance under a specific contract term allows for discretion on the part of either party." *Amoco Oil Co., supra*, 908 P.2d at 498.

■■■■ The Agreement between Capitol Hill and Dr. Mahan, which allocated billing responsibilities to Capitol Hill, therefore contained a covenant of good faith and fair dealing regarding the responsible collection of accounts receivables. The evidence presented at trial, however, demonstrated that Capitol Hill breached that covenant. Capitol Hill retained control over all billing services, collections, and accounts receivable pertaining to Dr. Mahan's services until September 1, 1997. During early 1997, multiple billing problems were attributable to Capitol Hill's staff. Capitol Hill's staff failed to bill many of Dr. Mahan's patients within sixty days of their office visits, and as a result the patients' insurance companies would not compensate Capitol Hill for at least $84,000 in untimely charges. The jury could also reasonably infer based on the evidence presented that the actions of Capitol Hill's staff caused additional accounts receivable to go uncollected.

In short, the actions of Capitol Hill's staff deprived Dr. Mahan of collections she would have received but for Capitol Hill's breach of its obligation to responsibly bill and collect for her services. Accordingly, we find no error in the trial court's decision to allow the jury to consider accounts receivable when determining damages.

■■■■ We also reject Capitol Hill's challenge of the damage award based on alleged double counting and improper inclusion of bona fide rent charges. Even if we assume, without deciding, that, as Capitol Hill contends, there was double counting of $13,000, and that $24,000 in alleged overcharges in rent were not awardable, there remains well in excess of $166,000 of claimed damages supported by the testimony of Dr. Mahan and her expert witness on damages. Given that the jury did not explain in mathematical terms how it calculated its award, and was not asked to do so, we have no way of knowing whether the jury included the doubly counted collections or the rent charges, both of which were challenged by Capitol Hill's counsel during the course of the trial, in its award. Thus, we cannot conclude that the jury's award of $166,000 is unsupported by the evidence.

### C. Attorney Fees Under the Colorado Wage Act

Following the jury's verdict, Capitol Hill filed a motion for attorney fees pursuant to former § 8–4–114, Colo. Sess. Laws 1967, ch. 398, § 80–8–14 at 861 (repealed at Colo. Sess. Laws 2003, ch. 286, § 2 at 1850), arguing that as the "winning party" on Dr. Mahan's claim under the Wage Act it was entitled to an award of such fees. Former § 8–4–114 provided:

> Whenever it is necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due as provided by [the former] sections 8–4–104 and 8–4–105, the judgment in such action shall include a reasonable attorney fee in favor of the winning party, to be taxed as part of the costs of the action.

Capitol Hill's motion acknowledged that in *Hyland v. Pikes Peak Capital Corp.*, 714 P.2d 914 (Colo.App.1985), a division of this court held that where, as here, a party prevails on a Colorado Wage Act claim because

the factfinder determines that the claimant is not an "employee," neither party is entitled to attorney fees under former § 8–4–114. Nonetheless, Capitol Hill argued that *Hyland* was wrongly decided. The trial court denied Capitol Hill's motion, relying on *Hyland.*

On appeal, Capitol Hill challenges the trial court's ruling on its motion for attorney fees under former § 8–4–114. Capitol Hill relies on the decision in *Voller v. Gertz,* 107 P.3d 1129 (Colo.App.2004), which was announced approximately two months before the trial court denied Capitol Hill's motion. In *Voller,* a division of this court, with one judge dissenting, declined to follow *Hyland* and held that the winning party is entitled to attorney fees under the statute even when the reason for judgment in the winning party's favor is a determination that a claimant was not an "employee."

■ We conclude that the view expressed by *Hyland* and the dissent in *Voller* is more in accord with the language of the statute, considered in context. Therefore, we decline to follow *Voller,* and affirm the trial court's order denying Capitol Hill's motion.

■ In construing a statute we look first to its plain language, always striving to give effect to the General Assembly's intent and chosen legislative scheme. *Sooper Credit Union v. Sholar Group Architects, P.C.,* 113 P.3d 768, 771 (Colo.2005). Further, in construing a specific provision of a statute, we must consider the statutory scheme as a whole in an effort to give consistent, harmonious, and sensible effect to all its parts. *Gumina v. City of Sterling,* 119 P.3d 527, 530 (Colo.App.2004).

Former § 8–4–114 and the related provisions regarding claims for unpaid wages apply expressly to disputes between an "employee" and an "employer," terms specifically defined by the former § 8–4–101, Colo. Sess. Laws 1960, ch. 52, § 80–52–1(1), (3) at 152 (repealed at Colo. Sess. Laws 2003, ch. 286, § 2 at 1850), and not to labor disputes arising out of other relationships. Indeed, "[t]he entire Wage Claim Act concerns various aspects of [the employee-employer] relationship...." *Voller, supra,* 107 P.3d at 1136 (Taubman, J., dissenting).

In *Voller,* the majority reasoned that to deny recovery to a "winning party" because the claimant was not an "employee" would defeat the purpose of the statute to protect employers from unwarranted litigation under the Wage Act. *Voller, supra,* 107 P.3d at 1132. While we agree that protection from unwarranted litigation was one purpose of former § 8–4–114, we decline to expand the reach of the statute beyond its express terms in the name of furthering that purpose.

■ We also find it persuasive that when the General Assembly adopted a comprehensive modification of the Wage Act in 2003, which included limitations on and revisions to the attorney fees provision, it did not replace "employee" with some broader term. "The General Assembly is presumed to be cognizant of and to adopt the construction which prior judicial decisions have placed on particular language when such language is employed in subsequent legislation." *In re Marriage of Ebel,* 116 P.3d 1254, 1257 (Colo. App.2005); *accord Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997). Thus, the General Assembly is deemed to have agreed with the *Hyland* division's construction of the attorney fees statute when it enacted an amended version of it in 2003 without expanding its application beyond employee-employer relationships.

We therefore conclude that the trial court did not err in denying Capitol Hill's motion for attorney fees.

The judgment is affirmed.

WEBB and NEY *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2006.