BURGER KING CORPORATION,
Plaintiff,

v.

Zuri BARNES, Defendant.

No. 95–1408–CIV.

United States District Court,
S.D. Florida,
Miami Division.

March 23, 1998.

Howard Wolfson, Whitman, Breed, Abbot & Morgan, New York City; Don L. Horn, Gallwey Gillman Curtis Vento & Horn, P.A., Miami, FL, for Plaintiff.

Robert M. Einhorn, Zarco & Associates, P.A., Miami, FL, for Defendant.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiff Burger King Corporation's Motion for Summary Judgment on the Amount of Damages To Be Awarded for Defendant's Breach of Contract ("Motion") (DE # 61).

UPON CONSIDERATION of the Motion, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### BACKGROUND

**I. Procedural History**

This action arises out of the breach of a franchise agreement entered into between Burger King Corporation ("Burger King") as franchisor and Zuri Barnes ("Barnes") as franchisee. By Order dated August 28, 1996, the Court granted summary judgment for Burger King on its breach of contract claim. The Court found that a June 8, 1995 letter in which Barnes notified Burger King that he would be closing his Burger King restaurant and suspending performance of his obligations under the franchise agreement constituted an abandonment under the franchise agreement and a material breach of contract. Burger King is now before the Court seeking summary judgment as to the amount of damages it should be awarded as a result of the breach of contract.

**II. Undisputed Facts**

The franchise agreement breached by Barnes contained the following provisions which are relevant to the Court's inquiry:

**1. FRANCHISE GRANT: TERM AND LOCATION**

BKC grants to FRANCHISEE and FRANCHISEE accepts a franchise for a period of Twenty (20) years to use the Burger King System and the Burger King Marks only in the operation of Burger King Restaurant ("Franchised Restaurant") at *710 South Broadway Los Angeles, California* more fully described in Exhibit "A" ("premises"). The term of this Agreement shall commence on the date the Franchised Restaurant opens for business (the "Commencement Date") and shall expire Twenty (20) years thereafter (the "Term") unless sooner terminated in accordance with the provisions of this Agreement. FRANCHISEE agrees to operate the Franchised Restaurant at the specified location for the entire Twenty (20) year Term.

**8. ROYALTY AND ADVERTISING CONTRIBUTION**

A. Royalty

FRANCHISEE agrees to pay to BKC a royalty of 3.5% of gross sales for the use of the Burger King System and the Burger King Marks. Royalties shall be paid monthly by the Tenth (10th) day of each month based upon gross sales for the preceding month.

Since June 14, 1995, Barnes has not made any royalty payments to Burger King. Affidavit of Glenn Geoghegan ("Geoghegan Affi-

davit") at ¶ 2. The franchise agreement between the parties would have expired on or about December 11, 2012. *Id.* at ¶ 3. At the time of Barnes' breach, 210 months remained in the twenty year term of the franchise agreement. *Id.*

■ From January of 1993 through May of 1995, the 29 months during which Barnes operated the restaurant, the average monthly sales for the restaurant were $75,527.76. *Id.* at ¶ 4. Multiplying the average monthly sales of $75,527.76 by the remaining 210 months of the franchise agreement yields a total gross sales figure of $15,860,829.00. *Id.* at ¶ 5. According to Glenn Geoghegan, the Franchise Financial Analysis Manager for Burger King, the $15,860,829.00 represents the projected sales at Barnes' restaurant if it had continued to operate as a Burger King over the remaining term of the franchise agreement. *Id.* at ¶¶ 1, 5. Multiplying the projected sales by 3.5%, the percentage of the restaurant's gross sales that Barnes, in paragraph 8 of the franchise agreement, contracted to pay as royalties to Burger King, yields the sum of $555,129.00. *Id.* at ¶ 5. The $555,129.00 represents the royalty loss to Burger King resulting from the breach of the franchise agreement. *Id.* Reduced to net present value at a discount rate of 9%, Burger King suffered a royalty loss of $279,070.18. *Id.*

Burger King claims that it has not received any reduction in costs and expenses as a result of Barnes' breach of the contract. *Id.* at ¶ 6. Nevertheless, Burger King determined the average annual cost it incurs for the employees who work directly and continuously with franchisees—$2,286.00 per franchised restaurant for each Franchise Manager and $1,265.00 per franchised restaurant for each Operations Trainer. *Id.* Deducting the cost of a Franchise Manager and Operations Trainer from Burger King's lost royalties results in a net loss of $493,064.71. *Id.* That sum, reduced to net present value at a discount rate of 9%, yields a net loss of $247,870.13 as a result of Barnes' breach of the franchise agreement. *Id.*

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Ra-*

*dio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

## II. Damages for Breach of Contract

 Florida law allows a non-breaching party, in this case Burger King, to choose between being placed in the position it would have been in had the contract been fully performed by seeking lost profits or being placed in the position it was in prior to entering the contract by seeking the reasonably foreseeable damages flowing from the breach. *In re Mid–America Corp.,* 159 B.R. 48, 54 (Bankr.M.D.Fla.1993). Burger King has elected to seek recovery of lost profits. To prove its lost profits, Burger King must account for and deduct expenses from the gross profit amount. *Id.* at 55. Burger King, through the undisputed testimony of its Franchise Financial Analysis Manager and methodology used to calculate royalties and deduct expenses therefrom,[1] has established its lost profits to a reasonable certainty.[2] Having previously determined that Barnes materially breached the contract, the Court now concludes that Burger King is entitled to an award of $247,870.13 in damages for Barnes' breach.

While failing to come forward with specific facts to preclude summary judgment, Barnes presents several legal arguments in opposition to Burger King's Motion which the Court will address in turn. First, Barnes argues that Burger King's requested dam-

---

1. As the non-moving party, Barnes was required to come forward with specific facts via affidavits, answers to interrogatories or depositions showing a genuine issue of material fact for trial. Rule 56(e), Fed.R.Civ.P. Mere allegations and denials will not suffice to prevent summary judgment in favor of Burger King. *See id.* A review of the material submitted reveals that Barnes has not come forward with specific facts to defeat Burger King's Motion in the manner set forth in Rule 56(e), Fed.R.Civ.P.

 The only evidence submitted by Barnes is in the form of excerpts from the deposition testimony of Ralph Cimmarusti, a Burger King franchisee, in a separate action styled *Barnes v. Burger King Corp.,* 94–889–CIV–UNGARO–BENAGES. Barnes offers Cimmarusti's testimony in support of its argument that Burger King's proposed damages are too speculative. Barnes seeks to use the deponent's description of Los Angeles as a tough market with increasing competition for the proposition that future lost profits will be affected by the increased competition. Deposition of Ralph Cimmarusti of April 12, 1995 ("Cimmarusti Deposition") at 24, 63. Barnes even suggests that it is speculative to assume that his Burger King restaurant would have remained open until December of 2012.

 The Court finds that Cimmarusti's deposition testimony does not create a genuine issue of fact for trial. First, Barnes takes the description of downtown Los Angeles as a "tough market" out of context. When asked why he did not open a downtown Los Angeles restaurant up to that point in time, Cimmarusti stated, "It's just been a changing market; it's been a tough market, and just to this point for some reason, we have not opened locations. We would like to actively pursue them now." However, in his Memorandum of Law, Barnes carefully excises the deposition testimony to make it appear as if Cimmarusti is speaking about the present state of the downtown Los Angeles market. Second, an even cursory review of the testimony supports Burger King's demand for loss profits through the end of the contract term insofar as Cimmarusti speaks to the viability of Burger King restaurants in the area when he testifies that the relevant market can support an additional five to ten Burger King restaurants. *Id.* at 22–23.

2. It should be noted that the requisite standard for determining damages is "a reasonable certainty," *In re Mid–America,* 159 B.R. at 55, and not absolute correctness.

ages are too speculative under the *In re Mid–America* holding. *In re Mid–America* involved an attempt by Burger King to collect damages for breach of a franchise agreement. The *In re Mid–America* franchise agreement, like the franchise agreement in the instant action, required the franchisee to pay Burger King a royalty of 3.5% of gross sales for use of the Burger King system and marks. *In re Mid–America*, 159 B.R. at 50.

The *In re Mid–America* court determined that the franchisee therein was in default and that Burger King was entitled to damages. *Id.* at 54. Lost profits, the court noted, must account for and deduct expenses from the gross profit amount. *Id.* The court ultimately declined to award future royalty claims because the Burger King employee testifying on the issue of damages was unable to provide the amount or percentage of expenses paid by royalties. *Id.* at 55. The court thus found that there was insufficient evidence to ascertain damages with reasonable certainty. *Id.*

Barnes attempts to use the court's reasoning in *In re Mid–America* as a shield against summary judgment. Barnes claims that this action, like *In re Mid–America*, presents a situation in which damages are too speculative. The Court disagrees. The court in *In re Mid–America* declined to allow an award of lost profits because Burger King could not provide any evidence regarding expenses paid by royalties. *See id.* In the present action, Burger King has cured the evidentiary problem it encountered in *In re Mid–America* by providing the Court with undisputed evidence regarding costs incurred for operating a franchise and deducting those costs from future royalty payments.[3] Therefore, the Court concludes not only that *In re Mid–America* is distinguishable from this action but also that the evidence provided by Burger King herein has cured the deficiency.

Next, Barnes asserts that the doctrine of judicial estoppel bars Burger King from tak-

ing inconsistent positions in successive litigation. Barnes is referring to the testimony of Burger King's representative in *In re Mid–America* regarding Burger King's inability to provide the court with expense data for lost profits. In essence, Barnes is claiming that Burger King's inability to provide the requested information in 1993 prevents Burger King from providing the information to a different court several years later. Barnes' argument must fail for two reasons. First, Barnes' position requires the Court to hold that Burger King is not entitled to learn from or correct its mistake in the *In re Mid–America* case. The Court is particularly unwilling to so hold when Barnes has not come forward with evidence showing that Burger King remains unable to provide expense data for lost profits. Second, application of the doctrine of judicial estoppel would be inappropriate in this case.

■■■ Judicial estoppel is applied to the calculated assertion of divergent sworn positions and is designed to prevent parties from making a mockery of justice by inconsistent pleadings. *Taylor v. Food World, Inc.*, 133 F.3d 1419, 1422 (11th Cir.1998). As the court aptly noted in *Sullivan Properties, Inc. v. City of Winter Springs*, 899 F.Supp. 587, 591 (M.D.Fla.1995), judicial estoppel "is intended to protect courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." In a diversity case, the application of the doctrine of judicial estoppel is governed by state law. *Original Appalachian Artworks, Inc. v. S. Diamond Associates, Inc.*, 44 F.3d 925, 930 (11th Cir.1995), *cert. denied*, 516 U.S. 1045, 116 S.Ct. 705, 133 L.Ed.2d 661 (1996). As the breach of contract claim on which the Court entered summary judgment is before the Court·on the basis of diversity of citizenship, the Court will look to the law of Florida in determining the doctrine's applicability. In Florida, the doctrine of judicial estoppel prevents a party from pleading a position

---

**3.** On this point, Barnes argues that Burger King "fails to point out how the Burger King system differs at present from the Burger King System at the time the *In re Mid–America* case was decided." Defendant's Memorandum of Law at 6. In so stating, Barnes ignores his burden for purposes of opposing a summary judgment mo-

tion. It is Barnes, not Burger King, who must come forward with affidavits, answers to interrogatories or deposition testimony to rebut Burger King's methodology for calculating damages and Burger King's assertion that expenses can be ascertained. *See* Rule 56(e), Fed.R.Civ.P.

inconsistent with prior contentions to the prejudice of the adverse party who acquiesced in the former position. *Dunne v. Somoano,* 550 So.2d 5, 7 (Fla. 3d DCA 1989). Application of the doctrine also requires that the inconsistent party's initial position have been successfully maintained. *Id.*

▉ Assuming without deciding that Burger King's testimony regarding costs in this action is an inconsistent position to that taken by Burger King in *In re Mid–America* and not just an attempt to learn from past mistakes, judicial estoppel would still not be appropriate. First, Barnes was not a party to the *In re Mid–America* litigation who acquiesced in the former position. Second, Burger King's position in the *In re Mid–America* litigation, if it can be so classified, was not successfully maintained. To the contrary, Burger King's inability to provide the court with expense data resulted in the denial of damages. *See In re Mid–America,* 159 B.R. at 55.

▉ Barnes also claims that Burger King's failure to mitigate its losses precludes the Court from entering summary judgment in Burger King's favor. Mitigation is not an issue because the franchise agreement which is at the center of this case is a non-exclusive contract. When a non-exclusive contract is involved which would allow a plaintiff to enter into other similar contracts, an exception to the requirement of avoiding foreseeable consequences is created and there is no duty to mitigate or minimize losses. *Gary Massey Chevrolet, Inc. v. Ritch,* 507 So.2d 713, 715 (Fla. 1st DCA 1987); *Graphic Associates, Inc. v. Riviana Restaurant Corp.,* 461 So.2d 1011, 1014 (Fla. 4th DCA 1984). Accordingly, Barnes' mitigation argument must fail.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that the Motion be, and the same is hereby, GRANTED. Burger King is awarded the sum of $247,870.13 as damages for Barnes' material breach of the franchise agreement. Final judgment in favor of Burger King will be entered accordingly.