ACOUSTIC MARKETING RESEARCH,
INC. d/b/a/ Sonora Medical Systems,
Inc., Petitioner

v.

TECHNICS, LLC., Respondent.

No. 07SC789.

Supreme Court of Colorado,
En Banc.

Dec. 2, 2008.

Larry G. Johnson, Denver, Colorado, Attorney for Petitioner.

Glenn W. Merrick, G.W. Merrick & Associates, LLC, Greenwood Village, Colorado, Attorney for Respondent.

Justice RICE delivered the Opinion of the Court.

In this case we evaluate whether a medical device refurbisher found in breach of its contract with a technical consulting firm can be held liable for lost future royalties arising from the breach. Acoustic Marketing Research, Inc., doing business as Sonora Medical Systems, Inc. ("Sonora"), asserts that because its contract with Technics, Inc. permitted it to cease royalty-generating activity at any time, an award of future royalty damages to Technics is speculative as a matter of law. Sonora thus appeals the decision of the court of appeals in *Technics, LLC v. Acoustic Marketing Research, Inc.*, 179 P.3d 123 (Colo.App.2007), which affirmed the lump sum award of future royalty damages to Technics. We affirm the court of appeals and hold that future damages, including lost future royalties, may be awarded in a breach of contract action if they are demonstrated with reasonable certainty.

## I.  Facts and Proceedings Below

Sonora is a provider of aftermarket medical imaging products, including transesophageal echocardiology probes ("TEE-probes") used to obtain ultrasound images of the heart. Technics is a solo technical consulting practice. Sonora engaged Technics to help it develop and commercialize a re-coat and re-label ("RCRL") process for refurbishing TEE-probes. In exchange, Sonora agreed to pay Technics an hourly consulting fee over a period of up to nine months, as well as royalties on the first 3,000 TEE-probes re-coated and re-labeled. By compensating Technics in part through royalties, Sonora tied its outlay to the successful implementation of a RCRL process.

Sonora's obligation to pay royalties was to expire upon the re-coating and re-labeling of the 3,000th probe, or sooner if Sonora chose to abandon the RCRL process. Sonora was also bound to pay a "closure" fee to complete Technics' compensation. The agreement stated:

> At the completion of the re-coating and re-labeling of the 3000th probe or if [Sonora] discontinues or in any way abandons the [RCRL] process prior to the completion of the 3000th probe, [Sonora] will pay [Technics] a "closure payment" of $3,000 per year for a period of five (5) years, or at its option [Sonora] can make a one-time payment of $15,000, commencing one (1) year after the date of re-coating and re-labeling the 3000th probe or the date [Sonora] discontinues or abandons the re-coating and re-labeling process.

As long as Sonora made the closure payment, it could abandon the RCRL process at any time.

Consistent with the terms of the agreement, Technics consulted with Sonora for nine months, after which Sonora conducted additional development work and implemented an in-house RCRL process. However, Sonora refused to pay royalties to Technics, claiming that Technics did not contribute to the particular RCRL process being implemented. Technics filed suit seeking past and future royalties together with the closure payment. Sonora counterclaimed for declaratory judgment, alleging that the agreement was void due to breach, lack of consideration, fraud in the inducement, mutual mistake, and frustration of purpose.

At trial, Sonora's president testified that the company had been refurbishing approximately 200 TEE-probes per year, that it had never paid any royalties to Technics and had no plans to do so, and that it intended to continue its in-house RCRL process indefinitely. The jury also heard from Technics' valuation expert who offered his calculation of the present value of Technics' past and future royalties.

The jury concluded Sonora had materially breached the agreement, awarding $419,000 in damages for past-due royalties, future royalties, and the closure payment. The jury rejected Sonora's affirmative defenses of breach of contract by Technics, lack of consideration, mutual mistake, and frustration of purpose. The court of appeals affirmed, al-

though it reduced the judgment to $324,000.[1] Sonora petitioned this court for certiorari to determine whether an award of future royalty damages to Technics, under an agreement that permitted Sonora to cease in-house RCRL production at any time, is speculative as a matter of law. We hold that it is not. Because the jury found, with record support, that lost future royalties were reasonably certain to occur and capable of calculation, we affirm the court of appeals and uphold the award.

## II. Analysis

Sonora argues royalty payments are by nature contingent on uncertain future events, and therefore any award of damages for lost future royalties is speculative as a matter of law. Sonora also asserts that under the specific facts of this case, where the royalty agreement permitted Sonora to cease RCRL production—and hence royalty-generating activity—at any time, an award of future royalty damages is speculative as a matter of law. We disagree on both counts.

In a breach of contract action, the measure of damages is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred. *Taylor v. Colo. State Bank*, 165 Colo. 576, 580, 440 P.2d 772, 774 (1968). However, damages are not recoverable for losses beyond an amount that can be established with reasonable certainty. *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381 (Colo. 1993) (citing *Riggs v. McMurtry*, 157 Colo. 33, 39, 400 P.2d 916, 919 (1965)). Recognizing the "practical difficulties of proving future losses with precision," we have held that a plaintiff seeking future damages must provide the trier of fact with "(1) proof of the fact that damages will accrue in the future, and (2) sufficient admissible evidence which would enable the trier of fact to compute a fair approximation of the loss." *Id.* at 1382. In sum, as long as the fact of future loss is certain, the amount of damages awarded may be an approximation. *Id.*

Although we have stated generally that the rule of certainty applies to claims for future damages, *id.* at 1381, we have not addressed the rule in a case involving lost future royalties. Because royalty payments are by nature contingent on future events, such as future album sales or future oil extraction, Sonora argues we should hold all future royalty damages speculative as a matter of law. If we hold otherwise, Sonora asserts that royalty contracts will become risky and impractical. We disagree with the proposition that future royalties raise special concerns requiring departure from the general rule for future damages.

Other courts have allowed damages for future royalties as long as the loss is capable of being proved with a reasonable degree of certainty. For example, courts have typically allowed recovery of lost royalties when a franchisee terminates or repudiates a franchise agreement, as long as the franchisor can demonstrate that, but for the breach, the business would have enjoyed continued success. *See, e.g., Burger King Corp. v. Barnes,* 1 F.Supp.2d 1367, 1371 (S.D.Fla.1998) (awarding future franchise royalties based on calculations by Burger King financial analyst); *McAlpine v. AAMCO Automatic Transmissions, Inc.,* 461 F.Supp. 1232, 1275 (E.D.Mich.1978) (awarding future franchise royalties projected from present sales levels); *cf. I Can't Believe It's Yogurt v. Gunn,* No. Civ.A. 94–OK–2109–TL, 1997 WL 599391, at *24 (D.Colo. April 15, 1997) (acknowledging future royalties might be awarded on different facts, but holding future royalties could not be awarded to franchisor where franchisor's own termination of franchise agreement was proximate cause of future losses); *see generally* Robert Ebe et al., *Radisson and the Potential Demise of the Sealy–BarnesHinton Rule,* 27 Franchise L.J. 3, 3 (2007) (reviewing circumstances under which courts have allowed franchisors to recover damages for lost future royalties).

Furthermore, in cases involving artist royalties, courts recognize that artists with

---

1. The agreement between Sonora and Technics provided two tiers of royalty, one of which would be triggered depending on the per-unit cost of the RCRL process eventually implemented. The court of appeals concluded that there was insufficient evidence in the record to support the jury's basis of its award on the higher royalty tier.

an established track record may be able to prove lost royalties with reasonable certainty, notwithstanding the inherently risky and unpredictable nature of the entertainment business. *See, e.g., Contemporary Mission, Inc. v. Famous Music Corp.,* 557 F.2d 918, 926 (2d Cir.1977) (allowing evidence of lost future royalties projected from music album's initial success); *Freund v. Wash. Square Press, Inc.,* 34 N.Y.2d 379, 357 N.Y.S.2d 857, 314 N.E.2d 419, 421 (1974) (holding plaintiff author's claim for lost royalties speculative, but noting that lost royalties may be awarded where claimant provides stable foundation for a reasonable estimate of royalties); *see generally* Melvin Simensky, *Determining Damages for Breach of Entertainment Agreements,* 8 Ent. & Sports L. 1, 12–15 (1990) (reviewing case law on lost profits in entertainment contracts); Calvin R. House, *Good Faith Rejection and Specific Performance in Publishing Contracts: Safeguarding the Author's Reasonable Expectations,* 51 Brook. L.Rev. 95, 145 (1984) (reviewing case law on lost royalties in publishing contracts).

In sum, we recognize the difficulties presented in measuring prospective royalties, as with prospective profits generally. However, because lost royalties are often capable of being proved with a reasonable degree of certainty, we decline to hold that an award of future royalties is speculative as a matter of law. Where there is sufficient reliable evidence royalties would have accrued but for defendant's breach, the jury should be permitted to assess the amount of the lost royalties from the best evidence the nature of the case allows. *See Pomeranz,* 843 P.2d at 1382 (discussing *Tull v. Gundersons, Inc.,* 709 P.2d 940, 945 (Colo.1985)).

■ Sonora next argues that the evidence presented by Technics was not legally sufficient to sustain its burden of proof, and thus asks the court to hold that future royalty damages are speculative as a matter of law under the facts of this case. The jury's damages award included Technics' estimate of past and future royalty damages, which was based on the assumption that Sonora would refurbish 3,000 TEE-probes over approximately a six-year period. The court of appeals reduced the award but did not disturb the jury's underlying conclusion that Sonora would continue the RCRL process through at least the 3,000 units contemplated in the contract. Because the contract permitted Sonora to cease production at any time, Sonora maintains that the jury should not have been allowed to award damages based on projected future production.

A reviewing court will not set aside factual findings of a trial court where the findings are supported by competent and adequate evidence in the record. *Anderson v. Cold Spring Tungsten,* 170 Colo. 7, 13, 458 P.2d 756, 758 (1969). Again, *Pomeranz* dictates that a plaintiff seeking future damages must establish, by a preponderance of the evidence, the fact of damage and a reasonable basis for computation of that damage. 843 P.2d at 1382. The court of appeals held that Technics presented sufficient evidence to satisfy this burden. *Technics,* 179 P.3d at 128. We agree.

The jury's task in this case was to determine, as a factual matter, whether Sonora was reasonably certain to continue RCRL production, and to compute a fair approximation of any future damages which would accrue as a result. *See Pomeranz,* 843 P.2d at 1382. Sonora's claim that the terms of its agreement make it impossible to sufficiently establish the fact or the amount of future damage is without merit. Sonora's contractual right to stop production at any time was but one piece of evidence the jury was able to consider in evaluating whether the company would, indeed, stop. The jury also heard Sonora's arguments about the rapidly changing field of medical technology and the risk that the company's RCRL technology would become obsolete before the company could refurbish 3,000 TEE-probes. Although Sonora did not introduce expert testimony on the future TEE-probe market, Sonora's president testified that the uncertain nature of the industry makes it futile to develop business projections more than one year into the future.

On the other hand, the president also testified the company was refurbishing approximately 200 TEE-probes per year, the refurbishing business was profitable, and the company had no plans to discontinue it. The

jury heard from Technics' valuation expert, who presented market research on TEE-probes and testified that Sonora's product offering was competitively priced. The expert presented data reported by Sonora's parent company showing its medical device business had experienced an average growth rate of more than 18 percent annually since 2001. The expert testified that the market for TEE-probes was likely to remain stable over at least a five- to ten-year period.

The jury weighed this evidence and found for Technics, apparently concluding that Sonora was reasonably certain to continue the RCRL process until it had refurbished at least 3,000 probes. Sonora was operating in an established market and had eighteen months of production under its belt at the time of trial, giving the jury a reasonable basis for its conclusion. Because the contract provided for royalty damages to be computed on a fee-per-unit basis, the jury did not need to specifically calculate the future revenues Sonora would derive from continued production or to predict changes that might occur in the company's cost-basis for the RCRL process. Furthermore, because the contract provided a 3,000–unit ceiling on royalty damages, the jury was not asked to predict the viability of Sonora's RCRL process into the indefinite future.

In sum, this is a case for the fact finder. There are cases where the circumstances make it impossible for a jury to determine future royalties with a reasonable degree of certainty, and in those cases *Pomeranz* dictates future damages must be adjudged speculative as a matter of law. But this is not such a case. We hold that the jury's determination has adequate record support and shall not be disturbed on appeal.

Sonora finally argues that the award of future royalties works to rewrite the terms of its contract, requiring it to continue production of at least 3,000 units, even at a loss, in spite of its bargained for right to terminate production at any time. True, because Sonora breached the royalty agreement, it no longer has the option to avoid paying royalties even if it ceases RCRL production. However, the damages remedy is "not payable periodically as loss accrues," but is "tra-

ditionally made once, in a lump sum to compensate for all the relevant injuries, past and future." 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 3.1, 277–78 (2d ed.1993). Rather than waiting to see what the future holds, Sonora must accept the jury's assessment of the position Technics would have occupied had the breach not occurred.

### III. Conclusion

We affirm the court of appeals and hold that future damages, including lost future royalties, may be awarded in a breach of contract action if they are demonstrated with reasonable certainty. We further hold that the jury's award of damages for lost future royalties in this case, as adjusted by the court of appeals, was supported by the record and shall not be disturbed.

Justice COATS dissents, and Justice EID joins in the dissent.

Justice COATS, dissenting.

I agree with the majority's articulation of the "rule of certainty," governing the recovery of damages for breach of contract in this jurisdiction, but we part company over its interpretation of the rule as applied to this case. Although the plaintiff's expert testimony about the future profitability of producing the medical diagnostic instrument at issue here may have been admissible evidence, I nevertheless consider it insufficient to predict, with reasonable certainty, the future production choices of the defendant company. More broadly speaking, I consider it impossible to divine, with the required degree of certainty for a damage award, as yet unmade, and contractually unconstrained, choices whether to commit capital to any particular project in the future, and I do not believe the authorities relied on by the majority suggest otherwise.

The uncertainty of predicting future losses, whether they might be profits or royalties or any other kind of losses, provides the impetus for striking the balance attempted by the rule of certainty. *See Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381 (Colo. 1993). Although wide variations in the nature of contractual arrangements and the

likely effects of their breach unquestionably render the determination of "reasonable certainty" in any particular case highly fact dependent, the inclusion of a contractual condition allowing unfettered discretion to either continue or discontinue production, at the defendant's choice, radically alters the calculus of predictability. By virtually ignoring the qualitative difference between market conditions and subjective preference, and treating a party's unbridled freedom of choice as simply one more factor to be taken into account by a jury, the majority, at least to my mind, transforms our rule of certainty into a license for speculation.

The court of appeals apparently foresaw the difficulty of predicting damages in the face of an open-ended entitlement to produce no more than the defendant chose, and it therefore found, in reliance on the implied duty of good faith and fair dealing, this contractual term to simply be illusory. Perhaps in recognition that the implied duty of good faith and fair dealing cannot inject substantive terms into a contract or obligate a party to accept a material change in existing contractual terms, the majority would not similarly nullify the defendant's right to terminate production. Instead, it detects in this contractual condition no special significance at all.

Unlike the breach of a franchise agreement, however, where the issue is limited to the predictability of continued sales by the franchisee, *see* maj. op. at 98–99, or the breach of an agreement to exclusively distribute copyrighted material, where the issue is limited to a prediction about future sales, *see* maj. op. at 98–99, determining future losses on the basis of a contractual provision like that described by the majority in this case is not limited to making predictions about future sales or even continued profitability. It involves a psychological prediction about future choices that are in no way limited by the contract.

Furthermore, to acknowledge the speculative nature of future royalties under these contractual conditions would not deprive the plaintiff of meaningful remedies. To the extent that the defendant has breached its contract, it presumably no longer has a right to,

and therefore might be enjoined from, further use of the defendant's contribution in production, *cf. Storage Tech. Corp. v. Quantum Corp.*, 370 F.Supp.2d 1116, 1118 (D.Colo. 2005) (acknowledging right to grant injunctive relief to prevent violation of right secured by patent), leaving the defendant free to make other exclusive use contracts. By the same token, having established its right to royalties for the use of its contribution, in both the past and the future, the defendant is not barred from returning to court, should the defendant refuse to comply with its legal obligation to pay royalties on any future sales. *See I Can't Believe It's Yogurt v. Gunn*, No. 1997 WL 599391, at 24 (D.Colo. 1997) ("At worst, if the franchisor had not terminated the franchise agreement it might have been required to sue again or perhaps again and again to compel the franchisee to pay those future royalties in a timely fashion as those royalties accrued ...." (quoting *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App.4th 1704, 51 Cal.Rptr.2d 365 (1996))); *see also Am. Mach. & Constru. Co. v. Stewart & Haas*, 115 La. 188, 38 So. 960 (1905) (holding that where royalties accruing from year to year were not certain or absolute, equity was done by reserving plaintiff's right to sue for royalties as they accrued).

Finally, I am concerned about what appears to be the majority's addition of a punitive dimension to the rule of certainty. The majority acknowledges that awarding damages on the basis of the full 3,000 unit ceiling effectively deprives the defendant of its bargained-for right to terminate production at any time and pay only a "closure payment," rather than royalties on unproduced units. Without explanation or authority, however, it simply holds that because of the defendant's breach, it no longer has the option to avoid paying royalties, even if it ceases production. *See* maj. op. at 100.

While the majority purports to treat a contractual right to terminate production at any time as merely one additional factor for the jury's consideration, in fact it effectively eliminates the defendant's freedom of choice as a penalty for its breach. In this way, it backhandedly accomplishes precisely what the court of appeals attempted by extending

the implied condition of good faith and fair dealing. The majority actually increases the reasonable certainty of a damage award for future losses by simply eliminating the provision of the contract that created the greatest uncertainty. I find the majority's approach no more persuasive or satisfying than that of the court of appeals.

I therefore respectfully dissent.

I am authorized to state JUSTICE EID joins in this dissent.