24CA1054 Our Lady v Martinez Keystone 05-15-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1054
Summit County District Court No. 21CV30134
Honorable Reed W. Owens, Judge

Our Lady of the Mountain, LLC, a Colorado limited liability company,

Plaintiff-Appellant and Cross-Appellee,

v.

Martinez Keystone Properties, LLC, a Colorado limited liability company,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

BreckLaw, Mark Hurlbert, Emily H. Saunders, Breckenridge, Colorado, for
Plaintiff-Appellant and Cross-Appellee

Alpern Myers Stuart LLC, Gregory M. O'Boyle, Colorado Springs, Colorado;
Linden Kominek, P.C., Mary Kominek Linden, Colorado Springs, Colorado, for
Defendant-Appellee and Cross-Appellant

¶ 1     Plaintiff, Our Lady of the Mountain, LLC (Our Lady), purchased a two-story commercial building from defendant, Martinez Keystone Properties, LLC (Keystone Properties).  Several months after the transaction closed, Our Lady brought this litigation against Keystone Properties, asserting claims for breach of contract, unjust enrichment, and civil theft.

¶ 2     After a five-day bench trial, the district court rejected the unjust enrichment and civil theft claims.  But it found that Keystone Properties breached the contract and awarded Our Lady damages.  Despite a contractual fee-shifting provision, the court declined Our Lady's request for attorney fees and costs, finding that neither party prevailed.

¶ 3     Our Lady appeals the district court's determination that it was not the prevailing party and therefore not entitled to attorney fees and costs under the fee-shifting provision.  Keystone Properties cross-appeals the district court's judgment finding that it breached the parties' contract.

¶ 4     Addressing the cross-appeal first, we conclude that the record supports the district court's finding that Keystone Properties breached the parties' contract.  Turning to the appeal, we conclude

that the district court erred by determining that neither party prevailed in the litigation. Instead, the district court should have determined that Our Lady was the prevailing party and awarded it reasonable attorney fees and costs. Thus, we affirm in part, reverse in part, and remand with directions.

## I.     Background

¶ 5     Several years ago, Our Lady retained real estate agent Dennis Krueger to contact Keystone Properties about purchasing the building. Keystone Properties' manager, Robert Martinez, said Keystone Properties would sell the building for $6 million. Our Lady then asked Krueger to prepare a contract. Keystone Properties didn't enlist a seller's agent; instead, Martinez worked with Krueger on the transaction. Martinez therefore never directly communicated with Our Lady or its owner, William Fuller.

¶ 6     In February 2021, the parties executed a written contract for Our Lady to purchase the building from Keystone Properties.[1] The contract imposed numerous duties on Keystone Properties; for

---

[1] The parties used the standard-form commercial real estate contract, approved by the Colorado Real Estate Commission, with some modifications.

example, as part of its due diligence obligations, Keystone Properties was required to disclose any known adverse material facts about the building and provide various documents concerning the building and its operations.  The contract also prohibited Keystone Properties from amending, extending, or executing any new or existing leases affecting the building without Our Lady's prior written consent.  The contract gave Our Lady ninety days after the contract was executed to evaluate the purchase, and in the event Keystone Properties failed to satisfy certain duties under the contract, Our Lady had a right to terminate the contract.

¶ 7 The sale closed in May 2021, and Our Lady purchased the building from Keystone Properties for $6 million.

¶ 8 Several months later, Our Lady sued Keystone Properties, asserting claims for breach of contract, unjust enrichment, and civil theft.  The single breach of contract claim alleged multiple potential theories of breach.  Keystone Properties didn't assert any counterclaims or allege that Our Lady breached the contract.

¶ 9 After a five-day bench trial, the district court entered a thorough written order.  It rejected the unjust enrichment and civil theft claims.  As to the breach of contract claim, the court rejected

3

most of Our Lady's breach theories.  But it found that Keystone Properties breached the contract under one theory — namely, that Keystone Properties extended the lease of a commercial tenant without obtaining Our Lady's prior written consent.[2]  For this breach, the court awarded Our Lady $22,883 in damages for the rental income that it lost by being locked into the extended lease.

¶ 10    Though the court recognized that the contract contained a fee-shifting provision that entitled the prevailing party to its attorney fees and costs, it nevertheless determined that neither party prevailed in the litigation.  Specifically, the court reasoned that Our Lady wasn't the prevailing party because it had a "lack of success on the merits of nearly all of its claims" and recovered only about 2% of its requested damages.  As for Keystone Properties, the court noted that it wasn't the prevailing party either because it had breached the contract.

---

[2] The district court also found that Keystone Properties failed to substantially perform under the contract (and a separate agreement) on three other theories.  But the court found that Our Lady failed to prove its claim on those theories because it either waived any nonperformance, incurred no damages, or both.

¶ 11    Each party thinks the district court erred to some degree. Keystone Properties maintains that it didn't breach the contract, and Our Lady says it is entitled to its attorney fees and costs as the prevailing party under the fee-shifting provision because it succeeded on the breach of contract claim. Because it impacts the prevailing party analysis, we start with whether the court erred by finding that Keystone Properties breached the contract.

## II.    Keystone Properties' Cross-Appeal

¶ 12    Keystone Properties asks us to reverse the judgment, contending that the district court erred by finding that it breached the parties' contract. Alternatively, Keystone Properties says that the court improperly calculated and awarded damages. We disagree with both contentions.

### A.    Additional Background

¶ 13    In May 2016, Keystone Properties executed a lease agreement for Dos Locos, a restaurant, to lease a unit in the building for five years. At the end of the five-year term, the lease agreement gave Dos Locos the option to extend the lease for another five years.

¶ 14    In March 2021 — one month after Our Lady and Keystone Properties signed the contract to sell the building — Keystone

5

Properties contacted Dos Locos to confirm that it wanted to exercise its option to extend the lease. Martinez notified Krueger about the lease extension, who in turn notified Our Lady. Though Krueger couldn't recall if Our Lady objected to the lease extension, Fuller did "at some point" tell Krueger that "per the contract, [Keystone Properties] shouldn't be negotiating new leases without it being discussed with [Our Lady]." It's unclear whether Krueger passed this message to Keystone Properties.

¶ 15     Without any prior written consent from Our Lady, Keystone Properties and Dos Locos executed a lease amendment, extending Dos Locos' lease for five years and granting it another option to extend the lease. Keystone Properties then sent the executed lease amendment to Kreuger, who forwarded it to Our Lady.

¶ 16     The district court found that Keystone Properties breached the contract by failing to obtain prior written consent from Our Lady (or Krueger, its agent) before executing the lease amendment. It further found that Our Lady did not waive Keystone Properties' nonperformance because Our Lady was never properly informed about the new terms of the lease amendment. The court awarded Our Lady $22,883 in damages for the breach.

## B.    Breach of Contract

¶ 17    We begin with Keystone Properties' contention that the district court erred by finding it breached its duty to obtain Our Lady's prior written consent before executing the Dos Locos lease amendment.

### 1.    Standard of Review

¶ 18    We review a judgment following a bench trial as a mixed question of fact and law.  *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12.  That means we defer to the district court's credibility determinations and will disturb its factual findings only if they are clearly erroneous and not supported by the record.  *Amos v. Aspen Alps 123, LLC*, 2012 CO 46, ¶ 25.  But we review questions of law — such as contract interpretation — de novo.  *Sch. Dist. No. 1 v. Denver Classroom Tchrs. Ass'n*, 2019 CO 5, ¶ 11.

### 2.    Our Lady Didn't Waive, Accept, or Acquiesce to the Lease Amendment by Closing on the Purchase

¶ 19    Keystone Properties admits that it executed the lease amendment without Our Lady's prior written consent.  But it contends that it isn't liable for breaching the contract because Our Lady "accepted the amendment without objection and closed on the

7

purchase . . . with full knowledge of the amendment." Thus, Keystone Properties maintains that Our Lady "waived its right to claim a breach," "acquiesced" to the breach, or otherwise "accepted" the breach.

### a. Our Lady Didn't Waive Keystone Properties' Breach

¶ 20 First, Keystone Properties says that Our Lady's "remedy if it objected" to the lease amendment "was to terminate the [c]ontract," and because Our Lady didn't object and terminate the contract, it "waived its right to claim a breach under" the contract. The problem with this argument is that nothing in the contract conferred on Our Lady a right — much less a duty — to terminate the contract in the event Keystone Properties amended an existing lease without Our Lady's prior written consent.

¶ 21 Section 10.9 of the contract governs the parties' obligations concerning the building's leases. As relevant, Section 10.9 states:

> [Keystone Properties] will not amend, alter, modify, extend or cancel any of the Leases nor will [Keystone Properties] enter into any new leases affecting the Property without the prior written consent of [Our Lady], which consent will not be unreasonably withheld or delayed.

Section 25.1, which explains the circumstances under which the parties could terminate the contract or waive nonperformance, provides:

> *If a party has a right to terminate, as provided in this Contract (Right to Terminate)*, the termination is effective upon the other party's receipt of a written notice to terminate (Notice to Terminate), provided such written notice was received on or before the applicable deadline specified in this Contract. If the Notice to Terminate is not received on or before the specified deadline, *the party with the Right to Terminate accepts the specified matter, document or condition as satisfactory and waives the Right to Terminate under such provision.*

(Emphases added.) And finally, Section 30.1 laid out Our Lady's timeline for evaluating the purchase. Section 30.1 reads:

> [Our Lady] shall have until 90 days after [mutual execution of the contract] to evaluate the purchase of the property. The evaluation shall include but not be limited to the Title, Condominium Governing Documents, P.U.D. Documents, Appraisal, Financing, Survey, Physical Inspection, Leases and Estoppels, ADA and Environmental issues.

¶ 22     Section 10.9 prohibited Keystone Properties from amending the Dos Locos lease without Our Lady's prior written consent. Nothing in Section 10.9, however, provided Our Lady "a right to

terminate" the contract under Section 25.1 in the event Keystone Properties breached Section 10.9. Indeed, while several sections of the contract expressly cross-reference Our Lady's right to terminate under Section 25.1, Section 10.9 does not.[3] Similarly, Section 30.1 simply gave Our Lady ninety days to evaluate the building purchase; it doesn't cross-reference the right to terminate under Section 25.1 or otherwise provide Our Lady with a right to terminate the contract for a breach of Section 10.9.

¶ 23 Taken together, Our Lady was not required to "object" and terminate the contract to enforce its rights under Section 10.9. To the contrary, Our Lady had the right to treat the contract as valid and enforceable and sue Keystone Properties for damages.[4] Our

---

[3] For example, the court found that Keystone Properties failed to substantially perform under the contract by providing a late estoppel statement but that Our Lady waived that breach by not terminating the contract. The portion of the contract that addresses estoppel statements expressly provides that Our Lady had both "the right to review and object" to any estoppel statement and "the [r]ight to [t]erminate under [Section] 25.1" for any late or unsatisfactory estoppel statement.

[4] Though neither party mentions it, Sections 21 and 21.2 of the contract specifically allowed Our Lady "to treat this [c]ontract as being in full force and effect" with the "right to specific performance or damages, or both" in the event Keystone Properties failed to timely perform "any obligation" in the contract.

Lady therefore did not waive Keystone Properties' breach of Section 10.9 by closing on the sale without objection.

b.     Our Lady Didn't Acquiesce to Keystone Properties' Breach

¶ 24     Next, Keystone Properties argues that Our Lady's "silence," when it had "a duty to speak, constitutes acceptance or acquiescence."  But again, Keystone Properties hasn't directed us to any contractual provision requiring Our Lady to object and terminate the contract in the event Keystone Properties breached Section 10.9.  Absent any duty to speak, Our Lady didn't accept or acquiesce to the breach of Section 10.9.

c.     Remaining Arguments

¶ 25     Finally, Keystone Properties generally asserts that (1) Our Lady's failure to object to the lease amendment "violated the duty of good faith" and "deprived" Keystone Properties "of the opportunity to address any alleged issue"; (2) the doctrines of waiver (separate from the contract's waiver provision) and laches bar Our Lady's breach of contract claim; and (3) it would be "contrary to public policy" to allow Our Lady to pursue a breach of contract claim.  But these assertions again appear rooted in Keystone Properties' belief that Our Lady had a contractual right and duty to object and

11

terminate the contract. Because we have rejected that argument, and because Keystone Properties doesn't otherwise develop these assertions, we decline to address them further. *See Trudgian v. LM Gen. Ins. Co.*, 2024 COA 87, ¶ 31.

¶ 26 For these reasons, we conclude that Our Lady didn't "waive," "accept," or "acquiesce to" Keystone Properties' breach of Section 10.9 and that nothing barred Our Lady from asserting a breach of contract claim.

### 3. The Doctrine of Merger by Deed

¶ 27 Keystone Properties next contends that the doctrine of merger by deed barred Our Lady's "post-closing" breach of contract claim.

¶ 28 "The merger doctrine provides that a buyer's acceptance of a deed tendered in performance of a contract extinguishes prior covenants in an antecedent contract relating to title, quantity, possession, or emblements of the land." *Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313, 318 (Colo. App. 1996). But the doctrine "does not affect covenants which are not intended to be incorporated in the deed." *Id.*

¶ 29 Though Keystone Properties broadly asserts that Section 10.9 merged into the deed upon closing, it doesn't explain how Our

Lady's right to consent to new and existing leases either relates to the title and possession of the building or otherwise is a covenant that was intended to be incorporated into the deed. *See id.* It likewise did not make these specific arguments to the district court. And to the extent Keystone Properties develops any argument on this point on appeal, it does so for the first time in its cross-reply brief.

¶ 30 Arguments not presented to the district court are not properly before us. *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 340 n.10 (Colo. 2004). Nor are those raised and developed for the first time in a reply brief. *State ex rel. Weiser v. City of Aurora*, 2023 COA 52, ¶ 38 n.1. Thus, we decline to consider this contention.

## C. Damages

¶ 31 Keystone Properties also challenges the district court's damages award, arguing that (1) insufficient evidence supports the award, and (2) the court erred by not discounting the award to present value. We disagree with the first contention, and because the second contention is unpreserved, we don't address it.

### 1. Legal Principles and Standard of Review

¶ 32    In a breach of contract case, "the measure of damages is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred." *Acoustic Mktg. Rsch., Inc. v. Technics, LLC*, 198 P.3d 96, 98 (Colo. 2008). To that end, a district court may award damages for lost profits resulting from the breach. *Denny Constr., Inc. v. City & Cnty. of Denver*, 199 P.3d 742, 746 (Colo. 2009). To be recoverable, the lost profits must (1) be proved with reasonable certainty and (2) be the foreseeable result of a breach when the parties entered the contract. *Id.*

¶ 33    The district court "has the sole prerogative to assess the amount of damages, and its award will not be set aside unless it is . . . clearly erroneous." *In re Estate of Chavez*, 2022 COA 89M, ¶ 52 (quoting *Lawry v. Palm*, 192 P.3d 550, 565 (Colo. App. 2008)). But we review de novo "whether the district court misapplied the law when determining the measure of damages." *Id.*

### 2. Sufficient Evidence Supports the Damages Award

¶ 34    For breaching its duty to obtain Our Lady's prior written consent before executing the Dos Locos lease amendment, the district court awarded Our Lady $22,883 in lost rental profits.

14

Keystone Properties construes this order as awarding lost profits for the *option* that Dos Locos may exercise in 2026, as opposed to lost profits from the renewed five-year term under the lease amendment. And because it's unknown whether Dos Locos will exercise the additional option, Keystone Properties argues that any lost profits are speculative and thus unrecoverable.

¶ 35     But nothing in the court's order indicates that it awarded lost profits damages for the option that Dos Locos may exercise in the future.  And the record supports a finding that the lost profits were related to the renewed five-year lease term.  Indeed, Fuller testified that the lease amendment was "potentially damaging" because "it close[d] the door on the possibility of renegotiating a lease that was eminently expiring . . . .  And had it expired, [Our Lady] would have had every opportunity to renegotiate as [it] saw fit as the new owner of the property."  As well, when asked what damages Our Lady incurred after "inheriting this lease renewal," Our Lady's commercial real estate expert explained that it lost $22,883 in rental income by being locked into another five-year lease with a rental rate below the national consumer price index.

¶ 36    To be sure, the expert also made some inconsistent statements on cross-examination.  In particular, the expert seemed to agree with Keystone Properties' counsel that the $22,883 in damages was based on the option that Dos Locos might exercise in 2026.  Yet he clarified that he "didn't make any assumptions" about whether Dos Locos "would or wouldn't" renew its lease in 2026 because "[t]hat wasn't what [he] was asked to do, and [he] didn't do that."

¶ 37    In the end, it was for the district court to weigh the evidence, resolve any conflicts therein, and determine which period of time the damages calculation corresponded to.  *See In re Estate Owens*, 2017 COA 53, ¶ 22.  Because nothing in the court's order shows it awarded lost profits for the option term beginning in 2026, and because the record supports the court's damages award, we may not disturb it.  *See id.*; *see also Adler v. Adler*, 445 P.2d 906, 907 (Colo. 1968) (noting that in trials to the bench, it's the "duty" of appellate courts "to search the record for evidence most favorable to" the district court's judgment).

### 3. Discounting the Damages to Present Value

¶ 38 For the first time on appeal, Keystone Properties argues that the district court erred by failing to reduce the future lost profits award to present value.

¶ 39 To preserve an issue for appeal, a party must present the issue to the district court, and the court must be given the opportunity to rule on it. *Franklin D. Azar & Assocs. P.C. v. Ngo*, 2024 COA 99, ¶ 51. "Arguments not raised before the [district] court may not be raised for the first time on appeal." *Allen*, 102 P.3d at 340 n.10.

¶ 40 Keystone Properties' counsel briefly cross-examined Our Lady's commercial real estate expert about whether the expert had discounted the calculated damages to present value. But beyond that, Keystone Properties didn't tether its cross-examination to any argument. That is, it never argued that Our Lady's damages were flawed because they weren't reduced to present value, nor did it ask the court to reduce the damage calculation or present any alternate damage calculation. Indeed, Keystone Properties' written closing argument and proposed findings of fact and conclusions of law say nothing about present value. We're hard-pressed to conclude that a

17

couple of cross-examination questions — separated from any legal authority or argument — were sufficient to bring this argument to the court's attention and give the court an opportunity to rule on it. *See Ngo*, ¶ 51.

¶ 41     To the extent Keystone Properties points to other arguments it made before the district court concerning the damages calculation, that's not sufficient to preserve the specific present value argument it now raises on appeal. *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("We review only the specific arguments a party pursued before the district court.").

¶ 42     Because Keystone Properties did not preserve this contention, we decline to address it.

### D.     Request for Attorney Fees

¶ 43     Having rejected Keystone Properties' request to reverse the district court's finding that it breached the contract, we necessarily reject Keystone Properties' request for attorney fees "below and on appeal."

### III.     Our Lady's Appeal

¶ 44     The contract's fee-shifting provision states, in relevant part, that "in the event of any . . . litigation relating to this [c]ontract,

the . . . court must award to the prevailing party all reasonable costs and expenses, including attorney fees, legal fees and expenses." Our Lady contends that, because it prevailed on its breach of contract claim, the district court abused its discretion by finding that neither party prevailed. We agree.

### A. Legal Principles and Standard of Review

¶ 45    Contractual fee-shifting provisions supplant the general rule that the losing party doesn't have to pay the winner's attorney fees. *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 503 (Colo. App. 2003). These provisions generally contemplate that there will be one winner and one loser in the contract dispute and that the prevailing party will be entitled to recover its attorney fees. *Id.*

¶ 46    In breach of contract cases, our supreme court has adopted a seemingly bright-line rule that "the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees." *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 332 (Colo. 1994); *see also 23 LTD v. Herman*, 2019 COA 113, ¶¶ 56-57. Thus, the party that establishes a breach of contract is the prevailing party under a

contractual fee-shifting provision, regardless of whether any damages are awarded. *Spencer*, 884 P.2d at 332.

¶ 47 In noncontract cases with multiple claims, the supreme court has articulated a different test to determine which party prevailed for purposes of awarding costs. *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230-31 (Colo. 2004). In this context, the district court has discretion to determine which party prevailed based on various factors, including the relative strengths and weaknesses of the parties' claims, the degree of success each party had in the context of the litigation, and the time devoted to each claim. *Id.* at 231; *cf. Spencer*, 884 P.2d at 329-30 (rejecting a similar test to determine which party prevailed under a fee-shifting provision).

¶ 48 We review a district court's prevailing party determination for an abuse of discretion. *23 LTD*, ¶ 51. A district court abuses its discretion when it misapplies the law. *Reyher v. State Farm Mut. Auto. Ins. Co.*, 2012 COA 58, ¶ 35. We review de novo whether the district court applied the correct legal standard. *LaFond v. Sweeney*, 2015 CO 3, ¶ 12.

## B.    The District Court Applied the Wrong Standard

¶ 49    The district court found that Keystone Properties breached the contract and entered a judgment in Our Lady's favor on its breach of contract claim (a judgment that we affirm).  Even so, the court determined that Our Lady wasn't the prevailing party under the contract's fee-shifting provision because it had a "lack of success on the merits of nearly all its claims" and recovered approximately 2% of its requested damages.  In doing so, it appears the court applied *Archer*, not *Spencer*.

¶ 50    But *Spencer* specifically governs the prevailing party analysis under a contractual fee-shifting provision.  It held that the party who succeeds on liability — even absent any damage award — is entitled to attorney fees as the prevailing party under a contractual fee-shifting provision.  884 P.2d at 331-32.  By contrast, *Archer* didn't involve contract claims or a contractual fee-shifting provision, and nothing in *Archer* — which was decided after *Spencer* — suggests that the factors it outlined extend to fee-shifting provisions in breach of contract cases.  Recognizing as much, other divisions of this court have distinguished *Spencer* and *Archer* based on the nature of the claims presented.  *See 23 LTD*, ¶¶ 58-59 (holding that

21

*Archer* doesn't apply to contract cases); *Extreme Constr. Co. v. RCG Glenwood, LLC*, 2012 COA 220, ¶ 55 (same); *see also Pastrana v. Hudock*, 140 P.3d 188, 190-91 (Colo. App. 2006) (distinguishing the standards in *Spencer* and *Archer* and noting that "*Spencer* was specifically based on contract principles").

¶ 51 Because we conclude that *Spencer* applies, and because it's undisputed that Our Lady succeeded on its breach of contract claim, we conclude the district court erred by determining that neither party prevailed.

## C. Our Lady is the Prevailing Party

¶ 52 Keystone Properties says, however, that the district court got it right because Our Lady prevailed on only one of its "eleven contract claims." Though not entirely clear, Keystone Properties seems to argue that this is a multi-claim contract case and that, because it "prevailed" on the "other contract claims," *Archer* applies.[5]

¶ 53 We see some problems with that argument. First, as explained, *Archer* applies to multi-claim tort cases, 90 P.3d at 231,

---

[5] As to the unjust enrichment and civil theft claims, Keystone Properties says that they "do not factor into the propriety of the [district] court's prevailing party determination under" the fee-shifting provision. We therefore don't separately consider them.

whereas *Spencer* applies to breach of contract actions involving fee-shifting provisions, 884 P.2d at 331-32.

¶ 54 Second, Our Lady asserted only a single contract claim and prevailed on that claim.[6] The court found that only one party breached the contract: Keystone Properties. As a result, it entered judgment in favor of Our Lady on its breach of contract claim. We don't see anything in *Spencer* that limits the contractual prevailing party analysis to whether a party prevailed on multiple theories of contract breach or a single theory. *See id.* Indeed, *Spencer*'s language is expansive, holding that the party who succeeds in proving "*a violation of a contractual obligation* . . . is the prevailing party for purposes of awarding attorney fees." *Id.* at 332 (emphasis added). No doubt, the district court found that Keystone Properties violated a contractual obligation.

¶ 55 To the extent Keystone Properties relies on *Wheeler* to argue the district court properly found no prevailing party, we are

---

[6] To be precise, Our Lady asserted a single breach of contract claim with multiple theories, not multiple breach of contract claims. *See Messenger v. Main*, 697 P.2d 420, 421-22 (Colo. App. 1985) ("[W]hen only one legal right is asserted, it is a single claim for relief . . . even though alternative legal theories have been asserted as the bases for liability.").

23

unpersuaded. In *Wheeler,* the plaintiff and the defendant asserted competing breach of contract claims. 74 P.3d at 502. The trial court found that each party had breached the contract and awarded damages to each. *Id.* Both parties sought attorney fees under the contractual fee-shifting provision. *Id.* Applying the net judgment rule, the trial court found that the defendant (who recovered a greater damages award) was the prevailing party. *Id.* at 502-03; *see also Spencer,* 884 P.2d at 330 n.11 (explaining the net judgment rule). On appeal, a division of this court concluded the trial court didn't abuse its discretion by applying the net judgment rule and rejected the plaintiff's contention that "there can be two prevailing parties where both parties breach the contract." *Wheeler,* 74 P.3d at 503; *see also Lawry,* 192 P.3d 570 (affirming trial court's determination that neither party prevailed because both parties had succeeded on their respective breach of contract claims).

¶ 56    The facts here are different than *Wheeler.* Keystone Properties didn't assert a breach of contract claim against Our Lady, nor did the district court find that Our Lady breached the contract or award damages to Keystone Properties. And while Keystone Properties successfully defended against some of the breach theories, the

24

court entered a judgment for breach of contract in favor of Our Lady. We therefore are unpersuaded that *Wheeler* supports a determination that neither party prevailed when, as here, Keystone Properties was the only party that breached the contract, and the court entered a judgment on that claim exclusively in Our Lady's favor. *See Spencer*, 884 P.2d at 332 (When "a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party . . . .").

¶ 57 For these reasons, we conclude that the district court should have determined that Our Lady was the prevailing party under the fee-shifting provision and awarded it reasonable attorney fees and costs.[7]

---

[7] Though not relevant to which party prevailed under the fee-shifting provision, the district court may consider the fact that Our Lady didn't prevail on certain theories of breach or recover all the damages it sought in determining the reasonableness and amount of attorney fees to award. *See S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶¶ 23-25; *see also* Colo. RPC 1.5(a) (listing the factors a court may consider in making an upward or downward adjustment to a lodestar attorney fees calculation).

### D. Appellate Attorney Fees and Costs

¶ 58  Our Lady asks for its appellate attorney fees and costs. Given our resolution, we conclude that Our Lady is the prevailing party on appeal and is entitled to its reasonable attorney fees and costs under the contract's fee-shifting provision. *See Ranta Constr., Inc. v. Anderson,* 190 P.3d 835, 847 (Colo. App. 2008) (awarding the prevailing party its attorney fees and costs on appeal under contract's fee-shifting provision). We remand to the district court to determine and award Our Lady its reasonable appellate attorney fees and costs. *See* C.A.R. 39.1.

### IV. Disposition

¶ 59  We reverse the portion of the district court's judgment determining that neither party prevailed under the contract's fee-shifting provision. We remand the case to the district court to determine and award Our Lady its (1) reasonable attorney fees and costs incurred before the district court and (2) reasonable appellate fees and costs. In all other respects, we affirm the judgment.

JUDGE BROWN and JUDGE SCHOCK concur.